IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAMELA MYERS ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-1738 |
| JANI-KING OF PHILADELPHIA, INC., | : | |
| ET AL. | : | |

**SURRICK, J.**                                                                                       **DECEMBER  5 , 2012**

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss or Transfer. (ECF No. 8.) For the following reasons, the Defendants' Motion will be granted in part and denied in part.

### I.     BACKGROUND

On March 20, 2009, Plaintiffs Pamela Myers, Darryl Williams, and Wyatt Seals filed this class-action lawsuit against Defendants Jani-King of Philadelphia, Inc. ("JKP"), Jani-King, Inc. ("JK"), and Jani-King International, Inc. ("JKI") in the Philadelphia County Court of Common Pleas. (Notice of Removal, Compl. Ex. A, ECF No. 1.) Defendant JKP is a Texas corporation with its principal place of business in Pennsylvania, and is a wholly-owned subsidiary of JK.[1] (Compl. ¶ 6.) Defendants JK., and JKI are Texas corporations with principal places of business in Addison, Texas. (Compl. ¶¶ 7-8.) JK is a wholly-owned subsidiary of JKI. (*Id.*. ¶ 7.) JKP offers franchises for commercial cleaning businesses to persons who wish to own and conduct such businesses under the Jani-King name. (Burleson Decl., ECF No. 10.)

The named Plaintiffs are all residents of Pennsylvania. (Compl. ¶¶ 3-5.) The proposed

---

[1] Defendants contend that JKP's principal place of business is in Texas. (See Defs.' Memorandum of Law in Support of Motion to Dismiss or Transfer Venue ("Defs.' Mem.") 3, ECF No. 9.)

class of Plaintiffs consists of "all persons who performed cleaning services for Defendants in Pennsylvania from March 20, 2006 to the present." (*Id.* ¶ 15.) Using the Franchisee List of April 2007, Plaintiffs calculate that the group of potential class members for the class period consists of approximately 185 individuals with addresses in Pennsylvania and approximately sixty-one individuals with addresses outside of Pennsylvania. (Pls.' Remand Mem, Franchisee List Ex. A., ECF No. 11.)

Plaintiffs allege, on behalf of themselves and all others similarly situated, that Defendants sold them rights to Defendants' cleaning services franchise, and that the franchise agreements that secured those rights were, in reality, illegal employment agreements. (Compl. ¶ 25.) The Complaint sets forth the following claims: violation of the Pennsylvania Minimum Wage Act (MWA), 43 Pa. Cons. Stat. §§ 333.101, *et seq.* (Count I); violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. §§ 260.1, *et seq.* (Count II); breach of contract (Count III); breach of the duty of good faith and fair dealing (Count IV); and unjust enrichment (Count V). On April 24, 2009, Defendants removed the action to this Court based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (Notice of Removal.) On May 14, 2009, Plaintiffs filed a motion for remand to the Philadelphia Court of Common Pleas (ECF No. 6) and an accompanying Memorandum (ECF No. 11). On August 4, 2009, we entered an Order (ECF No. 29) and Memorandum (ECF No. 28) denying Plaintiffs' motion for remand.

Defendants filed the instant Motion to Dismiss or Transfer (Defs.' Mot., ECF No. 8), a Memorandum of Law in support thereof (Defs.' Mem.), and a Declaration from Donald A. Burleson (Burleson Decl). Defendants argue that the forum selection clause provided in the

franchise agreements at issue must be enforced, and accordingly the case should be dismissed in its entirety, or in the alternative transferred to the Northern District of Texas. (Defs.' Mot. 2.) The forum selection clause states as follows:

> The parties agree and intend this instrument to be executed, interpreted and construed in accordance with the laws of the state of Texas without reference to conflict of laws principles. Texas law shall apply to all claims, disputes, and disagreements between the parties, whether arising from alleged breaches of the contract or agreement or other claims arising in any way from the parties' dealings. Jurisdiction and venue is declared to be exclusively in Dallas County, in the State of Texas.

(Franchise Agreement ¶ 12.10, Compl. Ex. A .)

Plaintiffs filed a Response in opposition to Defendants' Motion. (Pls.' Resp., ECF No. 34.) On September 16, 2009, Defendants filed a Reply in support of their Motion to Dismiss or Transfer. (ECF No. 35.) Oral argument was held on Defendants' Motion on October 30, 2009. (ECF No. 36.) Defendants also filed a Notice of Supplemental Authority Regarding the Motion to Dismiss or Transfer on October 23, 2009. (ECF No. 38.)

**II.  DISCUSSION**

    **A.  Motion to Transfer Venue**

        *1.  Legal Standard*

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." A request for transfer under § 1404(a) may be granted when venue is proper in both the original and requested forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) (setting

forth factors to consider in determining whether transfer is appropriate).² Under § 1404, the district court has discretion to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Courts in the Third Circuit consider various private and public interests when determining whether a transfer is proper under § 1404(a). The private interest factors include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records.

*Jumara*, 55 F.3d at 879 (citations omitted).

The public interest factors include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

### 2. *Validity of Forum Selection Clause*

Before balancing the *Jumara* factors, we must determine whether the forum selection clause is valid. Federal law governs the evaluation of the forum selection clause in diversity cases. *Id.* at 877 ("Because questions of venue and the enforcement of forum selection clauses

---

² Venue is proper in the Eastern District of Pennsylvania, or in Dallas County Texas, because a substantial part of the events giving rise to the claim occurred here in the Eastern District of Pennsylvania, and Defendants have their principal place of business in Dallas County, Texas. *See* 28 U.S.C. § 1391.

are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of [*Erie*].") (internal quotation marks and citations omitted). A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown . . . to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum selection clause will be found unreasonable "if (1) [it] is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum, or (3) its enforcement would result in litigation so seriously inconvenient and unreasonable that it would deprive a litigant of his or her day in court." *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246 (E.D. Pa. 2007) (citing *Bremen*, 407 U.S. at 15-17).

Here, Plaintiffs argue that the forum selection clause is the product of undue influence and overweening bargaining power. (Pls.' Resp. 13-14.) Plaintiffs state that the Franchise Agreement is a "standard-form adhesion contract" that was presented to Plaintiffs on a "'take-it-or-leave-it' basis, without any opportunity to negotiate or change any of its terms." (*Id.* at 13.) Moreover, Plaintiffs allege that they are not "'experienced and sophisticated businessmen' who fully comprehended the significance of a forum selection clause buried in a thirty-page Franchise Agreement." (*Id.*)

Plaintiffs' arguments are unavailing. Numerous courts have determined that a non-negotiated forum selection clause in a form contract is enforceable. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991); *Campanini v. Studsvik, Inc.*, No. 08-5910, 2009 WL 926975, at *6 (E.D. Pa. Apr. 6, 2009); *Feldman*, 513 F. Supp. 2d at 246; *Kahn v. Am. Heritage Life Ins. Co.*, No. 06-1832, 2006 WL 1879192, at *4 (E.D. Pa. June 29, 2006); *Wilson of Wallingford, Inc. v. Reliable Data Sys., Inc.*, No. 95-6686, 1995 WL 734232, at *2 (E.D. Pa.

5

Dec. 5, 1995). The fact that the Franchise Agreement was a form contract, and that Plaintiffs did not engage in negotiations with regard to the forum selection clause do not render that clause unreasonable. Clearly, Plaintiffs had notice of the forum selection clause and had the opportunity to reject the Franchise Agreement if they chose to do so. *Carnival Cruise Lines*, 499 U.S. at 595.[3]

Plaintiffs argue that the forum selection clause is both procedurally and substantively unconscionable. (Pls.' Resp. 18-20.) Procedural unconscionability is found if the agreement is a contract of adhesion. *Tricome v. Ebay Inc.*, No. 09-2492, 2009 WL 3365873, at *2 (E.D. Pa. Oct. 19, 2009) (citing *Alexander v. Anthony Int'l., L.P.*, 341 F.3d 256, 265 (3d Cir. 2003)). As discussed above, Plaintiffs contend that the Franchise Agreement was a non-negotiated "standard-form adhesion contract that Plaintiffs and Class members had to sign before they could perform cleaning work for Jani-King." (Pls.' Resp. 18.) However, failure to negotiate a form contract does not constitute procedural unconscionablity. *Wilson of Wallingford,* 1995 WL 734232, at *2. Nor is a contract a contract of adhesion simply because the agreement is memorialized in a form contract. *Tricome*, 2009 WL 3365873, at *2 (citing *Feldman*, 513 F. Supp. 2d at 241).

When making a determination regarding procedural unconscionability, courts look to whether the party challenging the agreement had any meaningful choice regarding acceptance of its provisions. *Id.* (citing *Grant v. Phila. Eagles, LLC*, No. 09-1222, 2009 WL 1845231, at *6. (E.D. Pa. June 24, 2009)). Here, there are no allegations that Defendants used high pressure

---

[3] Plaintiffs had notice of the forum selection clause from the uniform franchise offering circular ("UFOC"), which warned Plaintiffs that the Franchise Agreement allowed litigation to be pursued only in Texas. (Burleson Decl. ¶ 11 & Ex. B. (UFOC).)

tactics or put external pressure on Plaintiffs to accept the Franchise Agreement. *Id.* at *3 (holding that a forum selection clause was not procedurally unconscionable where the defendants did not use high pressure tactics or put external pressure on plaintiffs to accept a contract). Absent a showing that such high pressure tactics were used, we are compelled to conclude that Plaintiffs had a meaningful choice regarding acceptance of the provisions of the Franchise Agreement. Procedural unconscionability has not been established.

Substantive unconscionability is found if the terms of the agreement so unreasonably favor one party that they "shock the conscience." *Id.* at *3. The agreement and forum selection clause at issue here are not so unreasonable as to shock the conscience. It is not unreasonable for a large national company, such as Jani-King, with franchisees located across the country, to attempt to focus its litigation in a particular forum rather than being forced to litigate in multiple jurisdictions. *Feldman*, 513 F. Supp. 2d at 242-43 (citing *Carnival Cruise Lines*, 499 U.S. at 593).

Since there appears to be no fraud, no undue influence, no overweening bargaining power, and no unconscionability, we conclude that the forum selection clause is valid.

3. *Transfer of Venue*

Turning to the *Jumara* factors, within the *Jumara* framework a forum selection clause is "treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880. While the forum selection clause is not dispositive, it should be given "substantial consideration." *Id.* Plaintiffs bear the burden of proof in demonstrating why they should not be bound by their contractual choice of forum. *Id.*

In this case, the private factors weigh in favor of Plaintiffs. With respect to the parties'

7

choice of forum, the plaintiff's choice is ordinarily given deference; however, where the plaintiff has contractually agreed to a proper venue, then such deference is inappropriate. *Id.* Here, Plaintiffs' and Defendants' choice of forum cancel each other out. This factor is neutral.

As to the third factor, where the claim arose, Defendants argue that the claim arose in Texas because the contracts were signed there. (Defs.' Mem. 9.) Plaintiffs maintain that the claim arose in Pennsylvania because the contracts were signed there and all of the cleaning work under the contract was performed in Pennsylvania. (Pls.' Resp. 15.) We agree with Plaintiffs. In determining whether venue is proper in a breach of contract case, the place of performance is typically where the claim arose. *Harrison v. L.P. Rock Corp.*, No. 99-CV-5886, 2000 WL 19257, at *3 (E.D. Pa. Jan. 7, 2000); *J.L. Clark Mfg. Co. v. Gold Bond Corp.*, 629 F. Supp. 788, 791 (E.D. Pa. 1985). Here, the place of performance is Pennsylvania. All of the cleaning jobs at issue in this case were performed in Pennsylvania and the surrounding area. (Franchise Agreement 1.) This factor favors Plaintiffs.

The convenience of the parties also militates in favor of Plaintiffs. Defendants argue that either party would be inconvenienced if forced to litigate in the other parties' chosen forum. However, Defendants' inconvenience is minimized by the fact that they have a regional office in Norristown, Pennsylvania. (Compl. ¶ 6.) In addition, because Plaintiffs are a class of approximately 200 persons, it would be unreasonable to require anyone who wishes to participate in the litigation to appear in Texas when Defendants have an office in Pennsylvania, and the work was performed in Pennsylvania. It will certainly be less of an inconvenience for Defendants to litigate this matter in Pennsylvania, where they maintain an office, than for the individual Plaintiffs to litigate in Texas.

The convenience of the witnesses also weighs in favor of Plaintiffs. Party witnesses are presumed to be willing to testify in either forum despite any inconvenience, therefore the focus is instead on the convenience of the non-party witnesses. *Mato v. Window World, Inc.*, No. 10-7617, 2011 WL 710473, at *5 (E.D. Pa. Feb. 28, 2011). As Plaintiffs indicate, the non-party witnesses needed for this case include any of the entities that retained the services of Jani-King franchisees. (Pls.' Resp. 16.) These entities are located in and around the Pennsylvania area. (*Id.*) The witnesses from Texas are party witnesses, limited to high-ranking employees in Jani-King's headquarters in Texas. Again, it will be less of an inconvenience for Defendants' witnesses to appear in Pennsylvania, where they maintain a corporate office, than it will be for Plaintiffs' witnesses to appear before a court in Texas.

Finally, the location of the books and records also weigh in favor of Plaintiffs. The franchisees' clients' books and records are located in the Pennsylvania area, and these records may be difficult to produce in Texas. (*Id.*) Furthermore, any records maintained by the Defendants in Texas will, almost certainly, be in electronic form, and would therefore be accessible at JKP's office in Norristown, Pennsylvania. (*Id.*)

The public factors also weigh in favor of Plaintiffs. First, as Plaintiffs observe, enforceability of a Texas judgment would be problematic because Plaintiffs all live and work in the Pennsylvania area, and Defendant JKP is located in Philadelphia. (*Id.* at 16-17.) With respect to the practical considerations that may make trial easy, expeditious, or inexpensive, many of the factors discussed above apply here — the location of the parties, the location of the witnesses, the place where the claim arose — these practical consideration make litigation in Pennsylvania easier and more efficient. In addition, Pennsylvania has a local interest in

9

interpreting and enforcing its own laws, specifically the Pennsylvania WPCL. *Campanini*, 2009 WL 926975, at *5 (concluding that a Tennessee choice-of-law provision did not foreclose the plaintiff from pursuing a claim under the WPCL); *Healthcare Mgmt. & Inv. Holdings, LLC v. Feldman*, No. 03-323, 2006 WL 2660628, at *6-7 (N.D. Ohio Sept. 15, 2006) (holding that the WPCL applied to an employment agreement notwithstanding the agreement's Delaware choice of law provision)[4]. Finally, a court in Pennsylvania will be more familiar with this Pennsylvania statute than a Texas court.

For these reasons, we conclude that Defendant's Motion to Transfer must be denied.[5]

**B.      Motion to Dismiss**

   *1.      Legal Standard*

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion "'courts [must] accept

---

[4] Plaintiffs also bring a claim under the Pennsylvania MWA (Count I). Since neither party has fully addressed whether the Texas choice-of-law provision precludes the allegations made under the Pennsylvania MWA, we will not, at this time address which state's law is applicable to Plaintiffs' state statutory claims. *See Cottman Transmission Sys., LLC v. Kershner*, 492 F. Supp. 2d 461, 466-71 (E.D. Pa. 2007) (analyzing whether a choice-of-law clause was invalidated with respect to the plaintiffs' state statutory claims). *See also Sepanski v. JaniKing, Inc.*, 822 F. Supp. 2d 309, 319 n.5 (W.D.N.Y. 2011) (foregoing a decision about the application of a choice-of-law clause to the plaintiff's state law claims where neither party addressed the issue).

[5] Other courts that have considered transfer in similar Jani-King litigation have also denied Defendants' motions to transfer. *See Sepanski*, 822 F. Supp. 2d at 317-20 (denying a motion to transfer venue under § 1404(a), based on a weighing of the interests of justice and convenience of the parties); *De Giovanni v. Jani King Int'l Inc.*, No. 07-10066 (D. Mass. Aug. 22, 2008) (holding that enforcing the forum selection clause "would be both unreasonable and unjust under the totality of the circumstances.") (*See also* Pls.' Resp., Ex. A.)

all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009*)* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In order to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*.

The court "must accept all of the complaint's well-pleaded facts as true, and may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court is not required to accept "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .'" *Wilson v. City of Philadelphia*, 415 F. App'x 434, 436 (3d Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1949).

### 2. *Breach of Covenant of Good Faith and Fair Dealing (Count IV)*

Defendants argue that the breach of the covenant of good faith and fair dealing claim cannot survive because Texas law does not recognize such a claim for franchise agreements. (Defs.' Mem. 18.) Defendants allege that the contracts-related claims are governed by Texas law, pursuant to the Franchise Agreement's choice of law clause. (*Id.* at 11 n. 4; Franchise

11

Agreement ¶ 12.10.) Plaintiffs argue that Pennsylvania law should apply, and that the Pennsylvania courts have recognized a duty of good faith and fair dealing with respect to franchise agreements. (Pls.' Resp. 22, 26.) Alternatively, they argue that if Texas law does apply to these claims, that the Texas courts have also recognized the duty of good faith and fair dealing with respect to franchise agreements. (*Id.* at 27-28.)

"Where federal jurisdiction is based on diversity of citizenship . . . the Court must apply the choice-of-law rules of the state in which it sits." *Cottman*, 492 F. Supp. 2d at 466. Because this Court sits in the Eastern District of Pennsylvania, Pennsylvania choice-of-law rules apply.

Before engaging in a choice of law analysis, we must first determine if a true conflict exists between Pennsylvania and Texas law. If the law of the two jurisdictions produces the same result on the particular claim at issue, then there is a "false conflict" and the court can forgo the choice-of-law analysis. *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997).

We conclude that a false conflict exists here with respect to the breach of duty of good faith and fair dealing claim, because this duty is not recognized for franchise agreements under either Texas law or Pennsylvania law. With respect to Texas law, Plaintiffs argue that a duty of good faith and fair dealing can lie where there is either a special relationship or substantially unequal bargaining power between the parties. (Pls.' Resp. 27.) They also argue that a duty of good faith is imposed by Texas Revised Civil Statute Article 4431(36) § 6.06(e), which states that "[e]ach party to a franchise agreement owes a duty of good faith and fair dealing to the other party." (*Id.*) However, that statute has been repealed.[6]

---

[6] Repealed by Acts 2001, 77th Leg., ch. 1421, § 13, eff. June 1, 2003.

While it is true that Texas courts have imposed a duty of good faith and fair dealing where a special relationship exists between the parties to a contract, the courts have consistently declined to extend the duty of good faith and fair dealing to franchise agreements. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595 n.5 (Tex. 1992)[7]; *Barrand v. Whataburger, Inc.* 214 S.W.3d 122, 139 (Tex. App. 2006); *Swire Pac. Holdings, Inc. v. Dr. Pepper/Seven-Up, Corp.*, No. 95–01525, 1997 WL 153794, at *4 (Tex. App. Apr. 3, 1997). Moreover, Plaintiffs contend that their relationship with Jani-King was that of employer-employee (Compl. ¶ 26), and Texas courts have concluded that the employer-employee relationship does not constitute a special relationship for purposes of the duty of good faith. *Oliver v. Rogers*, 976 S.W.2d 792, 806 (Tex. App. 1998) (citing *McClendon v. Ingersoll-Rand Co.*, 757 S.W.2d 816, 819 (Tex. App. 1988), *rev'd* 779 S.W.2d 69 (Tex. 1989), *withdrawn* 807 S.W.2d. 577 (Tex. 1991)).

Pennsylvania has also declined to extend the duty of good faith and fair dealing to franchise agreements. In *Atlantic Richfield Co. v. Razumic*, the Pennsylvania Supreme Court determined that there was a duty of good faith with respect to the termination of franchise agreements. 390 A.2d 736, 742 (Pa. 1978). Three years later, the court clarified *Razumic's* limitations. *Witmer v. Exxon Corp.*, 434 A.2d 1222 (Pa. 1981). In *Witmer*, the court held that "[t]he *Razumic* standards [] are applicable only in the context of an attempt on the part of the franchisor to terminate its relationship with the franchisee." *Witmer*, 434 A.2d at 1227. The

---

[7] Plaintiffs argue that this case has been superseded by statute, and they cite *Subaru of America, Inc. v. David McDavid Nissan, Inc*., 84 S.W.3d 212, 225-26 (Tex. 2002) for this proposition, which in turns cites Texas Revised Civil Statute Article 4431(36) § 6.06(e). As previously discussed, though, this statute has been repealed.

Pennsylvania Supreme Court and federal courts interpreting Pennsylvania law have not extended the duty of good faith outside of the context of termination of the franchise agreement. *AAMCO Transmissions, Inc. v. Wirth*, No. 11-4250, 2011 WL 6088671, at *11 (E.D. Pa. Dec. 7, 2011); *GNC Franchising LLC v. Kahn*, Nos. 05-1391, 06-283, 2008 WL 612749, at *7-8 (W.D. Pa. Mar. 3, 2008); *GNC Franchising, LLC, v. Farid*, No. 05-1741, 2006 WL 1878925, at *4-5 (W.D. Pa. July 6, 2006); *Bishop v. GNC Franchising, LLC*, 403 F. Supp. 2d 411, 419 (W.D. Pa. 2005), *aff'd*, 248 F. App'x 298 (3d Cir. 2007); *Valencia v. Aloette Cosmetics, Inc.*, No. 94-2076, 1995 WL 105498, at *2 (E.D. Pa. Mar. 10, 1995). The weight of authority supports this limitation on the duty of good faith. Accordingly, we decline to extend this duty to any conduct beyond termination of the franchise agreement.

Since a claim for breach of the duty of good faith and fair dealing would be barred under both Pennsylvania and Texas law, we are compelled to grant Defendants' motion with respect to Count IV.

### 3. *Breach of Contract (Count III)*

With respect to the breach of contract claim, there is again no true conflict presented here. Under Pennsylvania law, a breach of contract claim entails "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages.'" *Omicron Sys. Inc., v. Weiner*, 860 A.2d 554, 564 (Pa. 2004) (quoting *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002). Texas law requires a showing of "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of

the breach." *SLT Dealer Grp., Ltd., v. AmeriCredit Fin. Servs., Inc.*, 336 S.W.3d 822, 828 (Tex. App. 2011) (citing *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex.App. 2009). Under either standard, Plaintiffs have, at this early stage in the proceedings, plead sufficient factual allegations to state a claim to relief that is plausible on its face.

The parties do not dispute that the Franchise Agreement is a valid contract, and that Plaintiffs have performed under the agreement. The only issue is whether there has been a breach of a duty imposed by the contract. Plaintiffs allege that Defendants breached the Franchise Agreement by (1) failing to "offer Plaintiffs and the Class members commercial cleaning contracts with a certain value"; (2) failing to "replace commercial cleaning accounts lost for reasons not attributable to Plaintiffs and the Class members free of charge"; and (3) failing to "inspect the work done by Plaintiffs and the Class members, monitor their compliance with Jani-Kings's performance standards, and provide suggestions for improving their services." (Compl. ¶¶ 72-74.)

Specifically, Plaintiffs allege that the Defendants breached paragraph 4.3.1 of the Franchise Agreement, which provides:

> Franchisor will secure commercial cleaning and maintenance contracts and offer to Franchisee the opportunity to perform services in accordance with those commercial cleaning and maintenance contracts which will have cumulative initial gross monthly billings in the amount equal to the amount stated a the "INITIAL FINDER'S FEE BUSINESS" in the Franchise Summary.

(*Id.* ¶ 72; Franchise Agreement ¶ 4.3.1.)

In support of this claim, Plaintiffs allege that Defendants engaged in several courses of conduct that amount to a breach of paragraph 4.3.1, including: (1) underbidding the amount of

15

time required to perform a cleaning job; (2) underbidding the amount of staffing required to perform a cleaning job; (3) underbidding the value of cleaning jobs; (4) refusing to allow Plaintiffs to inspect the bid sheets before requiring them to accept or reject the work; (5) counting rejected jobs against the revenue levels promised to Plaintiffs; (6) offering cleaning jobs to more than one person and offering that job against the promised revenue levels for all persons to whom it was offered; (7) offering Plaintiffs geographically inconvenient jobs; and (8) charging Plaintiffs a series of excessive and improper fees. (Compl. ¶ 72.)

Construing the Complaint in the light most favorable to Plaintiffs, the conduct alleged is sufficient to state a plausible breach of contract claim. Defendants had an obligation to offer Plaintiffs contracts equal to a specified dollar amount. (*Id.* ¶ 67.) Plaintiffs allege that the contract price set for the cleaning jobs did not reflect the true and accurate value of the contracts. (*Id.* ¶ 72.) Taken as true, Plaintiffs allegations are sufficient to state a plausible claim for breach of paragraph 4.1.3 of the Franchise Agreement.

Plaintiffs further allege that Defendants failed to replace lost accounts pursuant to paragraph 4.17 of the Franchise Agreement, which provides in relevant part as follows:

> If an account cancels at no fault of yours before you service the account for 12 full months, the full gross monthly billing value of that account will be replaced within a reasonable period of time by another account or a combination of accounts, at no additional cost to you.

(*Id.* ¶ 73; Franchise Agreement ¶ 4.17.)

Again, Plaintiffs allege several courses of conduct that constitute a breach of the obligation outlined in paragraph 4.17. (Compl. ¶ 73.) Plaintiffs maintain that Defendants

16

underbid the value of the clients' cleaning jobs, refused to allow Plaintiffs the opportunity to inspect cleaning contracts, failed to provide Plaintiffs with reasonable notice of problems, failed to provide Plaintiffs an opportunity to correct problems, encouraged clients to terminate Plaintiffs account, and finally offered jobs that were geographically inconvenient for Plaintiffs. (*Id.*)

The Complaint's factual allegations give rise to a plausible inference that Defendants breached their duty with respect to paragraph 4.17 of the Franchise Agreement. Plaintiffs allege that Defendants undermined their ability to successfully perform the offered cleaning contracts, and that as a result of Defendants conduct, Plaintiffs lost cleaning contracts. (*Id.*) If the losses were in fact due to Defendants' conduct, and the accounts were not replaced by Defendants, then Defendants have breached their duties under paragraph 4.17. Accepted as true, Plaintiffs' allegations plausibly state a breach of the Franchise Agreement.

Finally, Plaintiffs allege that Defendants failed to inspect Plaintiffs' work in compliance with paragraph 4.17.3 of the Franchise Agreement, which provides in relevant part:

> A representative of Franchisor will inspect the accounts from time to time in order to insure [sic] that the service is performed in accordance with the cleaning schedule or instructions associated with the contract between Franchisor and the client and to the performance standards of Jani-King. If at any time, whether through complaint or inspection, a deficiency is discovered, Franchisor can elect to dispatch its own staff to the account and correct all deficiencies in performance. Franchisor has sole discretion in determining urgency and time frame when dispatching its staff to an account.

(*Id.* ¶ 74; Franchise Agreement ¶ 4.17.3.)

Plaintiffs claim that, in violation of this paragraph, Defendants engaged in conduct that included: (1) omitting to tell Plaintiffs that inspection results would be used to seek their

17

termination from cleaning jobs; (2) failing to use inspection results for agreed-upon purposes, such as evaluation of the quality of cleaning work; and (3) failing to provide Plaintiffs notice about problems and an opportunity to correct those problems. (Compl. ¶ 74.)

Accepting Plaintiffs' allegations as true, the Complaint contains facts that plausibly show a breach of contract. Based on paragraph 4.17.3, Defendants had a duty to inspect accounts to "insure [sic] that the service is performed in accordance with. . . the performance standards of Jani-King." (Franchise Agreement ¶ 4.17.3.) Plaintiffs claim Defendants breached this duty by using the inspection results for the termination of Plaintiffs, rather than the agreed upon purpose of evaluating Plaintiffs' performance. (Compl. ¶ 74.) Plaintiffs maintain that Defendants broke their promises to Plaintiffs by "churning" a limited number of clients through a large number of franchisees, thus generating additional fees and fines. (Pls.' Resp. 10.) Taken as true, these factual allegations state a claim that Defendants failed to fulfill the obligations set out in paragraph 4.17.3.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Transfer will be granted in part and denied in part.

An appropriate Order will follow.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**