UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD BROOKS and DARRYL WILLIAMS,<br><br>Plaintiffs,<br><br>v.<br><br>JANI-KING OF PHILADELPHIA, INC., JANI-KING, INC. and JANI-KING INTERNATIONAL, INC.,<br><br>Defendants. | Case No. 09-1738-RBS<br><br>DEFENDANTS' SUR-REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

## INTRODUCTION

In their reply, Plaintiffs abandon their request to certify a class under the Pennsylvania Minimum Wage Act. They continue to defend their request for a class under the Wage Payment and Collection Law (WPCL), but they do so with new cases that were not cited in their opening brief and new arguments about the record that they did not previously raise. Jani-King has not had the opportunity to respond to these arguments, and a response will aid the Court because the arguments are often incorrect.

Most fundamentally, Jani-King does not, as Plaintiffs assert, argue that the "use of the 'franchise' label alone precludes a finding of liability under the WPCL." Dkt. 79 at 4. Jani-King's position is that determining liability under the WPCL requires the Court to engage in a fact-intensive inquiry regarding whether Jani-King retained the right to control the manner in which its franchise owners performed their day-to-day work. The new cases Plaintiffs cite support Jani-King's position, and they do not support Plaintiffs' position that the controls inherent in all franchise systems—such as controls over the quality of the ultimate product that

are necessary to preserve a franchise system's brand and goodwill—automatically make all franchisees employees.

In connection with its opposition, Jani-King submitted sworn declarations from several franchisees explaining how they hire and fire employees, set hours, set pay, handle payroll, hire supervisors, train employees, accept and decline accounts, communicate with customers, resolve disputes with customers, inspect account results, and obtain new accounts. The Court should not ignore these declarations, as Plaintiffs argue, and consider only Jani-King's contracts and policies and procedures. Dkt. 79 at 2, 12. Plaintiffs cite no case certifying a class simply on the basis of franchisees operating under a franchise system—and the declarations show legitimate, individual evidence of control by the franchisees of a kind that precludes class certification.

## ARGUMENT

### I. Plaintiffs oversimplify the analysis required in applying the WPCL to a franchisor-franchisee relationship.

For the first time in their reply brief, Plaintiffs cite vicarious-liability cases involving franchisors and argue that they support Plaintiffs' position that Jani-King is the employer of its franchisees. But those cases support, not Plaintiffs' position, but Jani-King's, because they establish the proposition that labels are not dispositive in the franchise context and that the Court must instead consider individual facts demonstrating control over the manner of day-to-day work. The decision in *Drexel v. Union Prescription Centers*, 582 F.2d 781, 786 (3d Cir. 1978) observes—consistent with Jani-King's position—that "[s]ome degree of control by the franchisor over the franchisee would appear to be inherent in the franchise relationship" and that "the mere existence of a franchise relationship does not necessarily trigger a master-servant relationship, nor does it automatically insulate the parties from such a relationship." The decisions in *Patterson v. Denny's Corp.*, No. 07-1161, at *2 (W.D. Pa. Jan. 30, 2008) and *Myers. v. Garfield*

2

*& Johnson Enterprises, Inc.*, 679 F.Supp. 2d 598, 612 (E.D. Pa. 2010) merely allow vicarious liability claims against franchisors to proceed on a motion to dismiss. Finally, Plaintiffs' discussion of *Johnson v. Dunkin' Donuts Franchising L.L.C.*, No. 11-1117, 2012 WL 1828028, *23 (W.D.Pa. 2012) is completely wrong. Dkt. 79 at 7. In *Johnson*, the court *dismissed* a claim that a franchisor was vicariously liable for its franchisee's discriminatory conduct, finding that the requirements in the franchise agreement "were not atypical of a franchise relationship" and thus "are not sufficient to demonstrate that [the franchisee] acted as [the franchisor's] agent." *Id.*

The truth of Pennsylvania law is neither the caricatured version that Plaintiffs adopt for themselves nor the caricatured version they wrongly attribute to Jani-King. Franchisors are not employers simply because they are franchisors. Neither are franchisors immune from the WPCL simply because they are franchisors. The truth is that the type of controls inherent in operating a franchised system—controls guaranteeing the quality of the franchised product or service—are not the type of controls over a person's day-to-day work that make someone an employer. A franchisor may *also* exercise those latter controls, and if it does, it can be held an employer. But that is the relevant question to ask and answer. Courts thus must consider *both* the common contract, policies, and procedures established by the franchisor *and* the ways (if any) the franchisor actually controls the manner in which the franchisees accomplish their work. *See Romanski v. Prudential Prop. and Cas. Ins. Co.*, 514 A.2d 592, 594 (Penn. Sup. Ct. 1986) ("The vital test in determining whether a workman is a servant of the person who engaged him for work is whether he is subject to the other's control or right of control not only with regard to the work to be done but also with regard to the manner of performing it."); *see also Deron v. SG Printing, Inc.*, No. 3:11cv1934, 2012 WL 3992960, at *9 (M.D. Pa Sept. 4, 2012) (right to control the manner of work is the "most important" factor); *Am. Road Lines v. Workers' Comp.*

Case 2:09-cv-01738-RBS Document 821 Filed 11/27/13 Page 4 of 10

*Appeal Bd.*, 2012 WL 581101 at * 6 (Pa. Commw. Ct. Feb. 23, 2012) ("The key factor is whether the alleged employer had the right to control the work to be done, and the manner in which work is performed.").

In the *Juarez* case against Jani-King, which was brought by these same Plaintiffs' counsel in California, the court rejected Plaintiffs' argument that the controls exercised by a franchisor are inherently sufficient to make its franchisees employees, explaining that courts can

> safely exclude from the employee-employer relationship analysis facts that merely show the common hallmarks of a franchise—those that constitute a "marketing plan or system" under which the franchisee's operation is "substantially associated with the franchisor's trademark, service mark, trade name," or goodwill. Jani-King's franchisees are required to follow specific methods of cleaning and handle customer complaints a certain way because that is part of Jani-King's required franchise system. Franchisees must wear uniforms, use Jani-King's name and phone number in client communication, and receive approval before they create marketing and advertising tools because the system must be substantially associated with the franchise's service mark. Once it sets aside the policies required to protect Jani-King's service mark and goodwill, the Court finds very little—if any—common evidence tending to prove an employer-employee relationship between Jani-King and its franchisees.

*Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571, 583 (N.D. Cal. 2011) (citations omitted). The *Juarez* court did not, as Plaintiffs contend, hold that a franchisor can never be considered an employer. Rather, that court held that the ordinary indicia of a franchise relationship do not prove that a franchisor exercises sufficient control to render it an employer. The same logic applies equally under Pennsylvania law: Putting aside the common policies that show Jani-King only to be a franchisor, Plaintiffs have identified no common evidence of employment status that could support class certification.[1]

Plaintiffs' argument that various provisions of Article 4 of Jani-King's Franchise

---

[1] Plaintiffs suggest that the decision denying class certification in *Juarez* is on appeal. It is not. After the court denied plaintiffs' motion for class certification, it subsequently entered summary judgment for Jani-King. *Juarez v. Jani-King of California, Inc.*, 2012 WL 177564 (N.D. Cal. 2012). The summary judgment decision is now on appeal. The denial of class certification was not appealed.

4

Agreement give Jani-King the kind of control over its franchisees' day-to-day work that establishes an employment relationship is demonstrably incorrect. *See* Dkt. 79 at 13. Plaintiffs point to Article 4.10.3, which gives Jani-King the right to examine its franchisees' financial records. But that contractual right has nothing at all to do with a franchisee's day-to-day cleaning work. Plaintiffs also point to Article 4.19.3, which gives Jani-King the right to inspect the work that a franchisee has completed to ensure that its performance meets Jani-King's brand standards. If it does not, Jani-King reserves the right to correct the work itself and bill the franchisee for the time spent by its own employees in correcting the problems. (Article 4.19.5.) Instead of showing that Jani-King has the right to direct the manner in which a franchisee performs its work, this provision establishes a method for Jani-King to conduct inspections after the work is completed to assure compliance with the *results* expected under the Jani-King brand. Jani-King's inspection form shows the same thing. Dkt. No. 64-11. Michael Seid (Jani-King's expert witness) identified no fewer than thirty important operational decisions that must be made each day by Jani-King® franchise owners, and in which Jani-King plays no part. (Seid Decl., ¶ 84.) Jani-King's Franchise Agreement establishes no more than that it is a franchisor; the Agreement does not establish that it is an employer.

The testimony of Jani-King's employee Jerry Figlioli also made it clear, contrary to Plaintiffs' argument, that Jani-King's interest extends only to whether a franchisee's finished product meets Jani-King's standards:

> Q. And does your office do ongoing evaluations of franchisee performance?
>
> A. We look at the results of the cleaning on a periodic basis.
>
> \* \* \* \*
>
> Q. And how do they go about doing that?

5

> A. They have inspection reports. And on their iPhone they have a program that they know the cleaning schedule and what's supposed to be done and how often it's supposed to be done, so according to the specific cleaning requirements and schedule of the client, they're able to look at those areas and see if they're being cleaned according to the client's specifications, and then grade them based on the results that they see.

Dkt. 64-8, p. 146.

Still further, the testimony of several franchisees establishes that they exercise the type of control over their own businesses that precludes employee status. Plaintiffs ask the Court to ignore the testimony of these franchisees, *see* Dkt. 69 at 4-7; 11-12, 15-18, 19, and to consider only "the contract that governed their relationship with Jani-King and the written policies and procedures under which they operated." Dkt. 2; *see also* 3, 4, 9. But Plaintiffs do not cite a single case in which a class has been certified under the WPCL simply because a franchisor established a common franchising system using "contracts" and "written policies and procedures." In fact, the one class certification case applying Pennsylvania law cited by Plaintiffs considered *all* the relevant facts to determine whether the requirements under Rule 23 have been met. *See Sherman v. Am. Eagle Express, Inc.*, No. 09-575, 2012 WL 748400, at *9 (Mar. 8, 2012) (considering "dispatcher declarations, deposition testimony, and [defendants'] standard forms" to determine whether "the right to control manner and means by which the class members perform their work can be determined through evidence common to the class"). There is no legal basis for the Court to ignore relevant evidence from the franchisees, and the Court should therefore decline Plaintiffs' invitation to do so.

## II. Named Plaintiffs are not Typical of the Proposed Class, and do not Represent the Interests of All Class Members

Jani-King explained in its response brief that the named Plaintiffs are not typical or adequate representatives of their proposed class, for two reasons. First, named Plaintiff Brooks

6

operated his franchise via a corporate entity. Under settled Pennsylvania law, a corporate entity cannot bring a claim under the WPCL. Second, not all members of the proposed class wish to receive the relief that Plaintiffs seek here.

**A. Brooks has established a corporate entity to operate his franchised business**

Citing cases from other jurisdictions, Plaintiffs assert that it does not matter that some members of their proposed class (including named Plaintiff Brooks) operate their franchised businesses through corporate entities. (Pl. Br., pp. 15-16). Whatever the law may be in those other states, in Pennsylvania a corporate entity may not as a matter of law bring a claim under the WPCL. See *Frank Burns, Inc. v. Interdigital Commc'ns Corp.*, 704 A.2d 678, 680 (Pa. Super. Ct. 1997) ("[W]e conclude that a corporation cannot qualify as an employee for purposes of the WPCL"); *Little v. USSC Group, Inc.*, 404 F. Supp. 2d 849, 853 (E.D. Pa. 2005) ("Corporations such as LTS are not 'employees' for WPCL purposes and are not entitled to the WPCL's protections"). Plaintiffs make a public policy argument that denying corporate entities the right to recover under the WPCL will lead employers to force their employees to incorporate to evade the law. Whatever the merits of that argument, it is one that must be made to the legislature, not this Court. The court in *Frank Burns* conducted a thorough review of the existing statute and concluded that the term "person" in the WPCL specifically does not include a corporate entity. *Id.* at 681. As that court explained:

> Appellant next argues that the term "person" in this context includes corporations. We disagree. The term "person" does not include corporations when the context clearly indicates otherwise. 1 Pa.C.S. § 1991. The term "person" initially appears in the definition of "employer" at the phrase "every *person,* firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer." 43 P.S. § 260.2a (emphasis added). When interpreting a statute we must presume "[t]hat the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). Interpreting the term "person" in the phrase "*person,* firm, partnership, association, *corporation,* receiver or other officer of a court of this Commonwealth and any agent or officer" to include corporations would violate this

7

presumption by rendering the word "corporation" therein superfluous. Therefore, the phrase clearly indicates that "person" does not include corporations. Absent contrary indication, words that have a clear meaning in one place are interpreted the same throughout a statutory section. *Watson v. Unemployment Compensation Bd. of Review*, 176 Pa.Super. 490, 109 A.2d 215 (1954); *Commonwealth v. Stingel*, 156 Pa.Super. 359, 40 A.2d 140 (1945). Nothing in the definition suggests that the term "person" changes meaning mid-sentence. Therefore, we conclude that the term excludes corporations when it later appears in the phrase "any person in this Commonwealth."

*Id.* As a matter of law then, Brooks cannot pursue a claim under the WPCL. Class certification is inappropriate where a named Plaintiff's complaint fails to state a claim upon which relief can be granted. *See McNulty v. Fed'l Housing Fin. Agency*, 2013 WL 3147641 at * 7 (M.D. Pa. 2013) ("The court's finding that the plaintiff's complaint fails to state a claim upon which [relief] can be granted disqualifies the plaintiff as a proper class representative and effectively moots the question of whether to certify the action as a class action"). Brooks is not qualified to represent Plaintiffs' proposed class, and that class cannot include any franchisee who operates a Jani-King® franchise through a corporate entity.

### B. An inherent conflict of interest exists between those franchisees who wish to be classified as employees and those who do not.

Jani-King has submitted declarations from many franchise owners who wish to remain independent contractors rather than employees. Plaintiffs dismiss those declarations as so-called "happy camper" statements, suggesting (without evidence) that Jani-King somehow improperly pressured those franchisees to submit them. Jani-King provided copies of the declarations at issue to Plaintiffs during the course of discovery. Plaintiffs were free to depose the declarants. They chose not to do so. Having declined the opportunity, Plaintiffs cannot now make the unsubstantiated allegation that the declarants do not sufficiently understand their own businesses or their own interests to be heard.

8

Nor can this issue be dismissed as one applicable only in the 9th Circuit. The Third Circuit considered the same issue in *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141 (3rd Cir. 2008), in which it considered a challenge to a program implemented by Ford to provide cash incentives to dealers to improve customer satisfaction. The plaintiffs sought to certify a class of all Ford dealers, alleging that Ford had imposed varying standards on dealers to meet its incentive program and had thus favored some dealers over others. In denying the plaintiffs' motion for class certification, the court found that the plaintiffs' claims "reflect diverse and conflicting interests within the proposed class of Ford dealers," as some dealers benefited from the incentive program while others were harmed by it. *Id.* at 147-48. Those conflicting interests prohibited certification of the proposed class because "the rules and requirements of the [incentive program], standing alone, may, as plaintiffs allege and as the District Court found, reflect a common course of conduct. However, this action involves many non-common issues based on Ford's conduct in implementing the [incentive plan] and each proposed class member's treatment under the [incentive plan]…These non-common issues overtake any common issues so that as a result the latter do not predominate." *Id.* at 148.

The same is true here. Plaintiffs' proposed class includes some franchisees (the named Plaintiffs) who apparently wish to be classified as employees, and some who prefer to remain independent contractors. It also contains some franchisees who hire their own employees, and others who perform cleaning work themselves. Some franchisees are corporate entities, while others are individuals. Inherent conflicts of interest exist among the franchisees that Plaintiffs seek to certify into a single class. Plaintiffs' Motion should be denied.

9

## CONCLUSION

Plaintiffs have failed to show by evidence common to all members of their proposed class that Jani-King retains the type of control necessary to impose liability under the WPCL. Nor have they demonstrated that named Plaintiffs are adequate representatives of their proposed class, or that the proposed class endorses the relief they seek. Stripping away the evidence that shows no more than the control inherent in every franchise relationship for purposes of protecting the brand and goodwill, there is no basis on which to certify the proposed class.

Dated: November 26, 2013

    s/ Kerry L. Bundy
    Kerry L. Bundy (Pro hac vice)
    Aaron D. Van Oort (Pro hac vice)
    Eileen M. Hunter (Pro hac vice)
    Jason J. Stover (Pro hac vice)
    **ATTORNEYS FOR DEFENDANTS**
    Faegre Baker Daniels LLP
    2200 Wells Fargo Center
    90 South Seventh Street
    Minneapolis, MN 55402-3901
    Phone: 612-766-7000
    Fax: 612-766-1600
    kerry.bundy@faegrebd.com
    aaron.vanoort@faegrebd.com
    eileen.hunter@faegrebd.com
    jason.stover@faegrebd.com

    **TODD EWAN**
    FISHER & PHILLIPS
    RADNOR FINANCIAL CENTER
    201 KING OF PRUSSIA ROAD
    RADNOR, PA 19087
    Phone: 610-230-2140
    Fax: 610-230-2151
    tewan@laborlawyers.com