**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HOWARD BROOKS[1] and DARRYL WILLIAMS, on behalf of themselves and all others similarly situated,<br>　　　　　Plaintiffs,<br>　v.<br>JANI-KING OF PHILADELPHIA, INC., JANI-KING, INC., and JANI-KING INTERNATIONAL, INC.,<br>　　　　　Defendants. | Case No. 2:09-cv-01738-RBS<br><br>Hon. R. Barclay Surrick |

**PLAINTIFFS' CORRECTED REPLY IN SUPPORT OF THEIR**
**MOTION FOR CLASS CERTIFICATION**

Plaintiffs have brought this case on behalf of a Class of mostly immigrant janitorial workers who allege they were misclassified as independent contractors and suffered various wage law violations on account of the misclassification. A similar case filed in Massachusetts was certified to proceed on a class-wide basis and, thereafter, the plaintiffs (represented by the same counsel) obtained summary judgment. *See DeGiovanni v. Jani-King*, 262 F.R.D. 71 (D. Mass. 2009).[2] In another similar case filed in California, the court denied class certification. *See Juarez v. Jani-King of Cal., Inc.*, 273 F.R.D. 571 (N.D. Cal. 2011). However, this decision was founded on the court's

---

[1]  This case was originally captioned "*Pamela Myers and Darryl Williams, on behalf of themselves and all others similarly situated v. Jani-King of Philadelphia, Inc., Jani-King, Inc., and Jani-King International, Inc.*" By stipulation on September 3, 2013, Plaintiffs substituted Howard Brooks for Pamela Myers, who is now deceased.  *See* [Doc. 67].

[2]  The federal court in Massachusetts recently denied Jani-King's motion for reconsideration of the summary judgment ruling and for decertification of that class. *See DeGiovanni et al. v. Jani-King*, 07-10066, Doc. 243 (D. Mass, Sept. 12, 2013).

determination that workers who are labeled "franchisees" must meet a different standard for proving they have been misclassified, and that the plaintiffs had not met that standard. The *Juarez* decision is now on appeal to the Ninth Circuit.[3] Regardless, the proper test for whether this Court should certify the proposed Class is not whether Plaintiffs are likely to win or lose on the merits but, instead, whether their claims can be proved on a class-wide basis.

Plaintiffs have sought class treatment for two claims: that Defendants took improper deductions from their pay in violation of the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL"); and that Defendants did not pay the legally-mandated minimum wage for all hours worked or the legally-mandated overtime wages required for hours worked beyond 40 in a workweek in violation of the Minimum Wage Act, 43 P.S. § 333.101 *et seq.* ("PMWA").

With respect to Plaintiffs' improper deductions claim, the Court will apply a "right of control" test to determine whether the Class members were, in fact, misclassified as employees. To determine whether Defendants maintained a "right of control" over Plaintiffs' and the Class members, the Court will look to common evidence including the contract that governed their relationship with Jani-King and the written policies and procedures under which they operated.

---

[3] The *Juarez* ruling is in direct conflict with well-established Pennsylvania case law holding that a franchise agreement does not preclude a finding of a "master-servant" relationship. *See Drexel v. Union Prescription Centers*, 582 F.2d 781, 786 (3d Cir. 1978). The district court in *Juarez* also recognized that the effect of labeling workers as franchisees was "not entirely clear" and that "[c]ourts in other states have reached different conclusions as to what test should apply to employment classification claims in the franchise context." *See Juarez*, Order Granting Interlocutory Review, Doc. 181 at p. 3 (Exhibit A).

With respect to Plaintiffs' minimum wage and overtime claims, the Court would need to apply a more multi-faceted "economic realities" test. Plaintiffs recognize that court decisions addressing whether class certification should be granted under this test are more varied than under the "right to control" test. Plaintiffs are also mindful of the recent decision in *Sherman v. American Eagle Exp., Inc.,* 2012 WL 748400 (E.D. Pa. 2012), which certified a class under the WPCL but not under PMWA – as well as the difficulties Plaintiffs would likely face in ultimately proving minimum wage and overtime damages for a class in this case given the lack of time records and the varying experiences of how much Jani-King franchisees worked and were paid. As a result, Plaintiffs have decided to narrow their request for class certification in this case to only their WPCL deductions claim. This narrowing will streamline and simplify the issues presented at this stage of the proceedings and make this case more easily manageable on a class-wide basis.

As discussed further below, the focus of the "right to control" test that applies to Plaintiffs' WPCL claim is the rights the alleged employer reserves for itself. These reserved rights are evident in a broad range of proof common to the proposed Class, including: Jani-King's franchise agreement, its manuals and training documents, and its admissions regarding its policies. This common proof strongly suggests that the Court should grant class certification of Plaintiffs' claims under the WPCL.

In an effort to defeat class certification, Jani-King points to alleged differences in the actual control Jani-King exercised over individual Class members. This tactic must fail because, as Pennsylvania courts have unequivocally found, employment status under the WPCL turns on alleged employers' "right to control" their workers, not on the

3

actual control they exerted. *Id.* Here, whether Jani-King maintained the "right to control" class members' work can be determined by examining the abundance of evidence common to the entire proposed Class. In fact, courts regularly grant class certification of misclassification claims, acknowledging that the "right to control" test is amenable to class-wide determination. *See, e.g., Sherman v. American Eagle Exp., Inc.,* 2012 WL 748400 (E.D. Pa. 2012); *Scovil v. FedEx Ground Package System, Inc.,* 886 F.Supp.2d 45, 56 (D. Me. 2012) (certifying class of workers who had claimed they were misclassified under a state law that uses a "right to control" test to determine employment status); *Phelps v. 3PD, Inc.,* 261 F.R.D. 548, 564 (D. Or. 2009) (same); *Dalton v. Lee Publications, Inc.,* 270 F.R.D. 555, 565 (S.D. Cal. 2010) (same). This case is no different. Plaintiffs' WPCL claim can be determined on evidence common to all putative Class members, making class certification appropriate.

Jani-King also argues that class treatment is inappropriate because evidence that Jani-King retained the right to control class members' work demonstrates nothing more than the "common hallmarks of a franchise" and, therefore, must be disregarded. *See* [Doc. 69 at pp. 12-15]. In effect, Jani-King is arguing that its use of the "franchise" label alone precludes a finding of liability under the WPCL. Not only does this argument improperly urge the Court to make a determination on the merits at the class certification stage, but it is in direct conflict with Pennsylvania case law.[4] *See infra*, pp. 5-8. Indeed, such a ruling would allow any employer to evade liability for violations of the WPCL, and other employment laws, simply by using the "franchise" label for its

---

[4] Here, the Court has entered an Order bifurcating class and merits discovery. Thus, the Court should be particularly mindful not to improperly weigh merits issues at the class certification stage because Plaintiffs did not have the benefits of any merits discovery in moving for class certification.

4

business operation.  Notwithstanding Jani-King's arguments to the contrary, in deciding whether the workers at issue are employees or independent contractors, the Court will need to evaluate common evidence relevant to the "right to control" (including the common franchise agreement, policies and manuals).  Thus, this issue can be decided on a class-wide basis.

## ARGUMENT

1. **There Is No Special Exception For Franchises That Would Preclude The Court From Finding Class Members Were Employees of Jani-King Under The WPCL, Nor Is There An Exception That Would Preclude The Court From Examining The Franchise Agreement Or Other Common Evidence In Making That Determination**

As a threshold issue, Jani-King's assertion that the Court should disregard common evidence of Jani-King's right to control class members because this evidence merely demonstrates the "common hallmarks of a franchise" is meritless.  *See* [Doc. 69 at p. 13].  Similarly, Jani-King's argument that considering the contents of a "franchise agreement" for the purposes of determining employment status would "eliminate franchising as a possible business structure in the state" is extreme hyperbole, designed to divert the court from highly probative common evidence of class members' employee status under the WPCL.  *See* [Doc. 69 at p. 2].  These arguments are nothing more than a disingenuous attempt to insulate Jani-King from liability in light of the overwhelming common evidence that it retained the right to control the Class members' work.  Further, these arguments are directly contradicted by Pennsylvania case law.

In the analogous context of vicarious liability, Pennsylvania courts have consistently held that a "master-servant" relationship may exist notwithstanding the existence of a franchise agreement.  *See e.g. Drexel v. Union Prescription Centers*, 582

F.2d 781, 786 (3d Cir. 1978) ("the fact that the franchise agreement expressly denies the existence of an agency relationship is not in itself determinative of the matter"); *Patterson v. Denny's Corp.*, 2008 WL 250552, at *2 (W.D. Pa. 2008) (finding that the plaintiff's allegation that the defendant franchisor was vicariously liable for conduct of franchisee because the franchisor exercised control over franchisee was sufficient to state a claim).

Significantly, in *Myers v. Garfield & Johnson Enterprises, Inc.,* 679 F.Supp.2d 598, 612 (E.D. Pa., 2010), this Court expressly rejected the very same arguments that Jani-King now raises. In *Myers* the defendant franchisor argued that, because the control it exerted over its franchisee was typical of any franchisor/franchisee relationship, it could not be held liable for its franchisee's conduct under a joint employment theory. *Id.* This court rejected this argument and found, instead, that the plaintiff had sufficiently stated a claim against the franchisor based on the allegations that the franchisor maintained control over the franchisee. *Id.* The *Myers* court reasoned that the "mere existence of a franchise relationship" did not "automatically insulate the parties" from the existence of an employment relationship. *Id. quoting Drexel*, 582 F.2d at 786. Thus, as *Myers* plainly held, Jani-King is not insulated from liability under the WPCL or immune to class certification simply because it purports to be a franchisor.

Similarly, Jani-King's assertion that the Court should disregard the Parties' franchise agreement directly conflicts with well-established Pennsylvania law that courts must evaluate the terms of a franchise agreement in order to determine whether a "master-servant" relationship exists. *See Drexel,* 582 F.2d at 785-786 ("Whether the

control retained by the franchisor is ... sufficient to establish a master-servant relationship depends in each case upon the nature and extent of such control as defined in the franchise agreement or by the actual practice of the parties").

Notably, Jani-King mistakenly relies on the court's decision in *Johnson v. Dunkin' Donuts Franchising L.L.C.,* 2012 WL 1828028 (W.D. Pa. 2012), for the proposition that a franchise agreement, common to the entire putative class, may not serve as evidence of an employment relationship.  See [*Doc.* 69 at 13-14].  In reality, *Dunkin Donuts* stands for the opposite proposition: that the "franchise agreement" is, in fact, central to a determination of employment status.  See *Dunkin Donuts*, 2012 WL 1828028 at *23, citing *Drexel,* 582 F.2d at 786.  Significantly, the plaintiff in *Dunkin Donuts* merely alleged that the defendant "controlled the terms of its franchise agreements" and required that products be purchased from approved manufacturers.  *Id.* Nevertheless, the court found that these minimal allegations were sufficient to support claim of vicarious liability.  *Id.*  Thus, Defendant's argument that the Court cannot look at common evidence such as Jani-King's franchise agreement, policies, or manuals to determine the Class members' employment status under the WPCL is clearly meritless under Pennsylvania law.

In light of the state of Pennsylvania law, Jani-King's heavy reliance on *Juarez v. Jani-King of Cal., Inc.,* 273 F.R.D. 571 (N.D. Cal. 2011) is misplaced.  Indeed, the *Juarez* decision is far from settled law, and is currently on appeal before the Ninth Circuit.  See Ninth Circuit, Docket No. 12-17759.  The *Juarez* court improperly considered the merits of the plaintiffs' claims at the class certification stage and erroneously found that there was a special exception (or heightened standard) for

franchises under California's Labor Code. *Juarez*, 273 F.R.D. at 582, 583. Further, the *Juarez* court recognized that the law on this point was "not entirely clear", and that "Courts in other states have reached different conclusions as to what test should apply to employment classification claims in the franchise context." *See Juarez*, Order Granting Interlocutory Review, Doc. 181 at p. 3 (Exhibit A). Accordingly, the *Juarez* court certified this very question for interlocutory review, recognizing that there was "substantial ground for difference of opinion" regarding its ruling that franchisees were held to a different standard under the Labor Code. *Id.*[5]

In contrast to *Juarez*, Pennsylvania law does not contain a "franchise" exception and provides that a "master-servant" or "employment" relationship may exist notwithstanding the presence of a franchise agreement. *See supra* at pp. 4-6. Indeed, Jani-King's argument that the court should exclude consideration of facts that show "only common hallmarks of a franchise" directly conflicts with the courts' holdings in *Myers, Dunkin Donuts, Drexel*, and *Patterson*.

Thus, the Court should disregard Jani-King's assertion that the mere use of the "franchise" label ought to shield franchisors from liability under the WPCL. Crediting Jani-King's argument would allow any employer in Pennsylvania to skirt employment laws simply by claiming to operate under a "franchise" model. As Pennsylvania case law makes clear, when the control retained by the franchisor becomes as all-embracing as it is here, and when the franchisor can dictate virtually every aspect of the franchisee's business operation as it can here, an employment relationship may be found without respect for how the employer classifies its workers.

---

[5] The Ninth Circuit subsequently declined interlocutory review of the court's decision, but the case is now on appeal following the entry of final judgment.

**2. Based On Overwhelming Common Evidence Regarding Jani-King's Right To Control Class Members' Work, The Court May Determine Class Members Employment Status Under The WPCL On A Class-Wide Basis.**

In arguing that Plaintiffs' WPCL claim cannot be fairly adjudicated on a class-wide basis, Jani-King ignores the overwhelming evidence of Jani-King's common policies governing all putative Class members. Class treatment of Plaintiffs' claims under the WPCL is particularly appropriate in light of the abundance of common evidence demonstrating an employment relationship. Specifically, Jani-King created a common scheme with respect to all putative Class members, requiring them all to sign standard contracts, classifying them all as franchisees, and promulgating standard policies and procedures governing both the performance of their duties and the manner in which they performed their work. Given the company's uniform treatment of individuals performing cleaning work on its behalf and the common role these workers played in Jani-King's business, it is simply disingenuous for Jani-King to assert that individual differences among putative employees prevents Plaintiffs from litigating their claims on a class-wide basis. In its effort to defeat class certification, Defendant catalogs alleged differences among individuals who performed cleaning services on its behalf. However, the overwhelming similarities in Jani-King's centralized procedures far outweigh any minor differences between individual Class members and the central issues of the case will be easily proven through common evidence.[6]

Pennsylvania courts have unequivocally found that the "right to control" is the predominant factor in the multi-factor test used to determine employment status under

---

[6] Jani-King's challenge to Plaintiffs' typicality on the basis that each Class member will be required to present individualized evidence of actual control fails on the same grounds.

the WPCL. *See Sherman*, 2012 WL 748400 at *8-9. In *Sherman* the court certified a class of courier drivers who had brought similar misclassification and unlawful deduction claims under the WPCL. There, the court found that the putative employer's "right to control the manner and means by which the class members perform their work" could be determined through examination of common evidence such as the testimony of the defendant's managers and supervisors, and the defendant's standard forms and policies. *Id.* Similarly, here, the Court should grant class certification because Jani-King's right to control class members is demonstrated through the very same type of common evidence as that relied upon by the court in *Sherman*, including, Jani-King's own admissions regarding its common polices, Jani-King's standard manuals, policies and forms, and its use of a uniform franchise agreement. Notwithstanding, Jani-King's assertion to the contrary, this case is no different from *Sherman*, simply because Jani-King uses the "franchise" label rather than the "independent contractor label" to misclassify its' employees.[7]

Specifically, common evidence presented in this case demonstrates that Jani-King maintains the right to direct the methods workers use to clean Jani-King accounts, operate Jani-King accounts, contact and communicate with Jani-King's customers, set cleaning schedules, and present themselves. *See* Training Manual, [Doc. 64-9] at 5074-77, 5135, 5187; Policies, [Doc. 64-10] at 2563-64, 2574 (7) and (8); 2597; 2609 (§ 4.26); Franchise Circular "Training Program," [Doc. 64-3] at 1179-80; Franchise

---

[7] Jani-King's effort to distinguish the facts in *Sherman* is equally unavailing. *See* [Doc. 69 at 19]. Although some factual differences are inevitable given that these cases involve different types of workers, both cases present the same type of common evidence, demonstrating the right of control retained by the putative employer and justifying class treatment .

10

Agreement, [Doc. 64-4] at 1229 (§ 4.19.1). Common evidence also demonstrates that Jani-King has policies in place to closely supervise and monitor Class members' work to ensure compliance with Jani-King's standards. *See* Figlioli Dep., [Doc. 64-8] at 146:1-147:4; 147:14-148:9; Sample Inspection Sheet, [Doc. 64-11]; Franchise Agreement, [Doc. 64-4] at 1225, 1229-30 (§§ 4.10.3, 4.19.3, 4.19.5).

Jani-King attempts to downplay its right to control class members' work, and the significance of the common evidence presented, by pointing out alleged minor differences in the ***actual*** control Jani-King exercised over individual Class members. This argument, however, directly contradicts well-established Pennsylvania case law that it is the alleged employer's "right to control" rather than the alleged employer's "actual control" that is dispositive of employment status under the WPCL. *See Sherman*, 2012 WL 748400, at * 9, *quoting J. Miller Co. v. Mixter,* 2 Pa. Cmwlth. 229, 277 A.2d 867, 870 (Pa. Commw. Ct. 1971) (internal citations omitted) ("[a] servant is the employe[e] of the person who has the Right of controlling the manner of his performance of the work, irrespective of whether he actually Exercises that control or not.") *and Rodgers v. P–G Publ'g Co.,* 194 Pa. Super. 207, 166 A.2d 544, 546 (Pa.Super.Ct.1961) ("It is not the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control which renders one a servant rather than an independent contractor"). The fact that cleaning workers would occasionally deviate from Jani-King's procedures or exercised some independent

11

judgment simply does not impede the Court's ability to analyze evidence of control on a class-wide basis.[8]

For example, although Jani-King cites several declarations for the proposition that some Class members have direct contact with their clients regarding complaints, *see* [Doc. 69 at p. 12], the question before the Court is not whether each individual Class member communicated with clients regarding a complaint.[9] Rather, pursuant to Pennsylvania courts' articulation of the "right to control" test, the proper question is whether Jani-King **retained the right to control** Class members' communications with clients. Here, the common evidence clearly demonstrates that it did. *See* Policies, [Doc. 64-10] at p. 2597 (detailing extensive "requirements" regarding franchisee-client communication).

Similarly, Jani-King's assertion that the workers have "complete control" over which accounts they service is in direct conflict with the factual record. *See* [Doc. 69] at p. 17. Jani-King concedes that it maintains the exclusive right to take away workers' accounts. *See* Doc. 69] at p. 17. Although Jani-King argues that this exclusive right is

---

[8] Jani-King's reliance on the expert report of Michael Seid on this point is improper because Mr. Seid's report goes to the merits of Plaintiffs' claims rather than to whether class certification is appropriate.

[9] The Court should also read Jani-King's fact declarations with skepticism. Although putative Class members signed these declarations, they were drafted by Jani-King's counsel and presented to the declarants by Jani-King managers. *See* Figlioli Dep. Tr. at pp. 165-175 (Exhibit B). In light of the inherently coercive nature of the employment relationship (i.e., the fact that these workers depend on Jani-King for their livelihood), the Court should read the declarations of putative class members presented by Jani-King with a large grain of salt. *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F. Supp. 2d 1053, 1060-61 (N.D. Cal. 2007) (declarations from current workers obtained by defendant "carry within them possible pressure arising from ongoing employment relationships" and are not dispositive as to issue of whether or not class treatment was appropriate).

simply a matter of "brand integrity", that does not alter the undisputed fact that Jani-King retains complete control over class members' work assignments.  *See* Policies, [Doc. 64-10] at pp. 2569-71, 2605-08 (§ 4.22), 2609 (§ 4.24), 2594 (§ 3.34); Agreement, [Doc. 64-4] at p. 1219, (§4.3.1), [Doc. 64-5] at pp. 1237-38 (§ 8).  Further, Jani-King's argument, based on testimony of individual workers, that its inspection of accounts relates solely to the "results" of the work rather than manner in which work is performed is similarly flawed.  *See* [Doc. 69] at pp. 17-18.  The record evidence actually demonstrates that Jani-King provides detailed training regarding the proper method for servicing its accounts, retains the right to supervise and monitor the class members' work and maintains the right to take away an account if it does not approve of how it is being serviced.  *See* Jani-King Training Manual [Doc. 69-9]; Figlioli Dep. Tr.  [Doc. 64-8] at 146:1-148:9; Sample Inspection Sheet, doc. 64-11; Agreement, [Doc. 64-4] at pp. 1225, 1229-30 (§§ 4.10.3, 4.19.3, 4.19.5); Policies, [Doc. 64-10] at p. 2609 (§ 4.24).

      Jani-King's attempt to distance itself from its written policies and the language in its contracts concerning how Class members were expected to perform their work falls short, as such policies are clearly evidence from which the Court can evaluate – on a Class-wide basis – whether Jani-King maintained the right to control Class members' work.  In sum, Plaintiffs need not, as Jani-King suggests, provide evidence that Jani-King controlled the day-to-day work of each and every single Class member.  Rather, evidence that Jani-King **retained the right to control** day-to-day work (which is overwhelmingly present) is sufficient for the Court to assess the workers' status as employees on a class-wide basis.

Furthermore, and notwithstanding Jani-King's arguments to the contrary, the common evidence in the record, cited in Plaintiffs' initial brief, is relevant to numerous other factors under the WPCL employment test. For example, common evidence demonstrates that: workers are not required to have any experience in the cleaning industry or any specialized skill (factor five), the Class members' work is part of Jani-King's regular business (factor nine) and Jani-King retains the exclusive right to assign class members to clean account and remove them from accounts (factor ten). *See* Website Excerpts, [Doc. 64-2] at p. 1; Figlioli Dep., [Doc. 64-8] at pp. 185:21-186:12; Policies, [Doc. 64-10] at pp. 2569-71, 2605-08 (§ 4.22), 2594 (§ 3.34); Franchise Agreement, [Doc. 64-4] at p.1219 (§§ 4.3.1); [Doc. 64-5] at pp. 1237-38 (§ 8).[10]

Finally, Jani-King erroneously argues that a class cannot be certified here because some Class members had their own employees who helped perform the cleaning work**.** *See* [Doc. 69] at pp. 16-17. Jani-King argues that "it is utterly inconsistent with employment status to for a franchisee to employ other people." *Id.* at p. 16. However, courts have certified classes in cases such as this one (including against Jani-King) where alleged "franchisees" employed other workers to help complete their assigned work. *See DeGiovanni*, 262 F. R. D. 71 (certifying wage claims brought against Jani-King on account of workers being misclassified as franchisee independent contractors, even where alleged "franchisees" engaged additional workers to help service accounts). Accordingly, the fact that some class members may have engaged additional workers to help service their accounts is not a bar to class

---

[10] Although Jani-King's franchise contract is written to run for 10 years, this is an entirely meaningless term, since Jani-King retains the exclusive right to assign and transfer accounts and, thus, can terminate a worker at any time simply by taking away his accounts.

14

certification. Common sense dictates that that the simple fact that Jani-King uses a multi-tier worker system to execute its janitorial work does not preclude a finding that janitorial workers are its employees. *See DeGiovanni*, Transcript of June 6, 2012 Hearing, [Doc. 64-1] at pp. 93-94 (ruling that "franchisees" were misclassified under Massachusetts Law notwithstanding that plaintiffs chose "how to staff" accounts and "whether to hire employees and whom to hire").

Thus, despite Jani-King's best efforts to raise individualized issues to defeat class certification, the record evidence demonstrates that the overwhelming similarities in its centralized procedures far outweigh any minor differences between the Class members and that the central issues in this case will be easily proven through common evidence. Accordingly, the Court should grant Plaintiffs' motion for class certification on their WPCL claim.

### 3. Plaintiffs Are Both Adequate and Typical Representatives of the Putative Class.

Jani-King's assertion that Howard Brooks is not typical of the class simply because he established his franchise as a corporate entity is meritless. Significantly, the *De Giovanni* court rejected this very argument, finding instead that the named plaintiff at issue "still [met] the broad class definition of the employment misclassification claims." *De Giovanni*, 262 F.R.D. at 86. Indeed, many courts have rejected this argument in similar contexts where the plaintiff's wage claim was predicated on improper misclassification. *See, e.g., Ruiz v. Affinity Logistics, Corp.,* 2009 WL 648973, *1-2 (S.D. Cal. 2009) (disregarding the named plaintiff's separate business identity and certifying a class of delivery drivers for employee misclassification claim); *In re FedEx Ground Package*

15

*System, Inc., Employment Practices Litigation,* 273 F.R.D. 424, 449-50 (N.D. Ind. 2008) (granting class certification for Texas delivery drivers despite incorporated status for some drivers in the class); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (employment status of mechanics who formed their own corporations must be determined under the applicable classification test).

In *Amero v. Townsend Oil Co.,* 2008 WL 5609064 (Mass. Super., 2008) the court granted plaintiff's motion for summary judgment, ruling that he had been misclassified as an independent contractor, despite the defendant's argument that he had incorporated his business. The court explained that: "If incorporation alone sufficed to transform an employee into an independent contractor, many employers would require that their employees do just that, and thereby exempt themselves from the requirements of the law." *Amero*, 2008 WL 5609064, at *3 (Mass. Super., 2008).

In contrast, the cases relied upon by Jani-King for the proposition that a corporation does not have a remedy under the WPCL are inapposite because these claims did not involve alleged misclassification. As a result, there was no dispute that the plaintiffs were properly independent corporate entities. Simply put, the fact that Mr. Brooks registered his franchise as a corporation has no bearing on whether or not he was an employee for the purposes of the WPCL. Public policy also suggests the absurd nature of Jani-King's argument, since finding that mere incorporation excludes an individual from coverage under the WPCL would allow employers to avoid liability for wage and hour violations simply by requiring their employees to incorporate.

Jani-King further argues that Plaintiffs are not adequate class representatives because they "seek relief that the putative class members do not wish to seek." *See* [Doc. 69] at p. 23. This argument is fatally flawed on several grounds. First, this argument is based on Ninth Circuit case law that has no application or support here. In Pennsylvania, the adequacy requirement is read broadly, and may be met by allegations that the class members have an identical relationship with the defendant, or by a claim that the named plaintiff has been injured by a common practice – even if other class members claim different injuries. *See Erie Ins. Exch. v. Erie Indem. Co.,* 722 F.3d 154, 165 (3d Cir. 2013) (adequacy requirement satisfied by "factual allegations in the Complaint that each subscriber has an identical relationship" with the defendant); *Inmates of the Northumberland County Prison v. Reish*, 2009 WL 8670860, *20 (M.D. Pa. Mar. 17, 2009) (adequacy prong met by plaintiff who seeks to ensure that class members are not subjected to the same allegedly illegal conduct); *In re OSB Antitrust Litig.,* 2007 WL 2253425, at * 17(E.D. Pa. Aug. 3, 2007) (named plaintiffs who "do not appear to present any conflicts of interest" because they "have presented similar allegations and are seeking the same type of relief" are adequate).

Second, Jani-King's "lack of adequacy" argument is premised on the assumption that the Class members who signed declarations attached to Jani-King's Opposition have made an informed decision about Plaintiffs' claims after receiving complete and unbiased information about the nature and intended effect of Plaintiffs' claims. However, the truth is that Jani-King's counsel drafted these declaration and a Jani-King manager subsequently presented these declarations to the declarants at Jani-King's offices to be signed. *See* Figlioli Dep. Tr. at 1pp. 65-175 (Exhibit B). Each declarant

accepted and signed the declaration as drafted by defense counsel and presented by Jani-King management. *Id.* at pp. 174-175 (Exhibit B).  Given the obvious conflict of interest between Jani-King and these proposed Class members, and the inherently coercive nature of their employment relationship with Jani-King, the Court should view these declarations with significant skepticism.

Indeed, courts have routinely ignored "happy camper" declarations in determining whether class certification is appropriate. *See, e.g., In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F. Supp. 2d 1053, 1060-61 (N.D. Cal. 2007) (noting that declarations from current workers obtained by defendant "carry within them possible pressure arising from ongoing employment relationships" and are not dispositive as to issue of whether or not class treatment was appropriate); *Khadera v. ABM Industries Inc.,* 701 F. Supp. 2d 1190, 1195 (W.D. Wash. 2010) (declarations for current employees refuting plaintiffs' allegation were not considered because they went to the merits of the claims, not the appropriateness of notice); *Joseph v. GMC*, 109 F.R.D. 635, 640 (D. Col. 1986) ("The mere fact that some class members may not wish to become members of the class or pursue claims against [defendant] does not indicate that their interests are antagonistic to those of the named plaintiffs or the remainder of the class, so that class action treatment would be inappropriate").

The putative class members should be entitled to information about their potential claims from a source other than Jani-King and afforded an opportunity to pursue those claims if they so choose.[11]

---

[11]  If the Court certifies the instant action to proceed on a class-wide basis, any Class member who does not wish to participate in this litigation – for whatever reason – will be given notice of their right to opt-out and a full opportunity to do so.

18

## **CONCLUSION**

For all of these reasons, and those set forth in Plaintiffs' Motion for Class Certification, the Court should certify Plaintiffs' claims brought under the WPCL. These claims – which depend on an analysis of whether Jani-King retained the "right to control" the cleaning workers' work – are eminently resolvable on a class-wide basis. Plaintiffs believe that, by streamlining this case to focus on these claims, they have made the Court's task much simpler. The Court should now grant Plaintiffs' motion.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 12, 2013 | / s/ Shannon Liss-Riordan |
|  | Shannon Liss-Riordan, *Pro Hac Vice* |
|  | Elizabeth Tully, *Pro Hac Vice* |
|  | Lichten & Liss-Riordan, P.C. |
|  | 100 Cambridge St., 20th Floor |
|  | Boston, MA 02114 |
|  | (617) 994-5800 |
|  |  |
|  | David J. Cohen |
|  | Kolman Ely, P.C. |
|  | 414 Hulmeville Avenue |
|  | Penndel, PA 19047 |
|  | (215) 750-3134 |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically this 12th day of December 2013. Notice of this filing was sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Elizabeth Tully
Elizabeth Tully