IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAMELA MYERS ET AL.       :

                               :         CIVIL ACTION

        v.                   :

                               :         NO. 09-1738

JANI-KING OF PHILADELPHIA, INC.  :
ET AL.                            :

## MEMORANDUM

**SURRICK, J.**                                         **MAY 10, 2019**

Presently before the Court is Plaintiffs' Unopposed Motion for Preliminary Class Action Settlement Approval. (ECF No. 155.) For the following reasons, Plaintiffs' Motion will be granted and the Court will schedule a Fairness Hearing.

## I.    BACKGROUND

### A.    Background Litigation

In this class action, Plaintiffs Daryl Williams and Howard Brooks brought claims on behalf of themselves and others similarly situated against Defendants Jani-King of Philadelphia, Inc., Jani-King, Inc., and Jani-King International, Inc. (collectively "Jani-King"). Plaintiffs performed cleaning services in Pennsylvania under Jani-King's janitorial franchise system. Plaintiffs allege that Jani-King misclassified them as independent contractors as opposed to employees and, by doing so, took improper deductions from their wages in violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1 *et seq.*

On March 11, 2015, the Court certified a state-law class on Plaintiffs' WPCL claims. *Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2015 WL 1055700, at *10 (E.D. Pa. Mar. 11,

2015), *aff'd sub nom. Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314 (3d Cir. 2016).[1] The

Court certified the following class: "all individuals who signed contracts with [Jani-King], and

performed cleaning services in Pennsylvania pursuant to such contract at any time from March

20, 2006 to present." (Order, ECF No. 88.) There are approximately 290 class members.

Jani-King filed a petition with the Third Circuit Court of Appeals pursuant to Rule 23(f)

of the Federal Rules of Civil Procedure, seeking to appeal this Court's class certification. (ECF

Nos. 93-95.) The Third Circuit granted the Petition and permitted the appeal. (ECF No. 97.)

The matter was stayed pending the outcome of the appeal. (ECF No. 101.) The Third Circuit

affirmed the Court's grant of class certification on September 21, 2016. (ECF No. 103.) The

trial was scheduled to take place on March 29, 2019. (ECF No. 112.) Just weeks before trial, the

parties entered into settlement negotiations with the assistance of a mediator. (Mot. Settle 2,

ECF No. 155.) The negotiations resulted in a settlement agreement. The parties now seek the

Court's preliminary approval of this settlement agreement. They also request that the Court

schedule a final approval hearing to take place no sooner than 90 days after the Order is entered

granting preliminary settlement approval.

B.    **Settlement Agreement**

Under the proposed settlement agreement, Defendants will pay a total amount of

$3,700,000. (Settlement Agmt. ¶¶ 7, 18, Mot. Settle Ex. 1.) Defendants agree to pay the total

amount in two installments of $1,850,000, the first of which to be paid 30 days after the Court

---

[1] Plaintiffs initially also requested class certification for claims brought under the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.101 *et seq.* That request has been withdrawn. (ECF No. 86.)

grants final approval of the settlement. (*Id.*) Defendants agree to pay the second installment no later than September 1, 2020, provided the effective date of the settlement has passed.[2]

Class members who submit claim forms within 60 days of class notice, and either promptly execute an updated franchise agreement or accept Defendants' buyout offer, will receive the first installment of their settlement share shortly after Defendants make their first installment payment. (*Id.* ¶¶ 5, 21, 29-30, 34.) The settlement is considered non-reversionary, which means that the total proceeds of the settlement, except for attorneys' fees and costs and for incentive payments made to class representatives, will be paid out to class members who submit claims. Each named Plaintiff is entitled to $10,000 as an incentive payment under the proposed settlement agreement. (*Id.* ¶ 24.) The agreement also provides for attorneys' fees not to exceed one third of the settlement fund. (*Id.* ¶ 23.)

In addition to making payments, Jani-King has also agreed to make changes to its business practices. Franchisees who settle with Defendants and wish to continue to do business with Defendants will be offered a new franchise agreement. The aim of the new franchise agreement is to eliminate various controls that Defendants had over the franchisees. (*Id.* ¶ 20.) For example, the new franchise agreement does not contain provisions for post-termination non-competition agreements. (*Id.*) It also shortens the non-solicitation period with respect to Jani-King accounts to 12 months. (*Id.*) In addition, franchisees may sign new business that they generate without paying finder's fees to Jani-King. (*Id.*) Jani-King also agrees to "work to transition its business to franchisees that manage multiple larger accounts and employ their own

---

[2] The effective date is defined as "the first date that is three days after the date on which the judgment entered pursuant to the Final Approval Order will be deemed final." (Settlement Agmt. ¶ 8.)

workers." (*Id.* ¶ 21.) Jani-King also agrees to make buyout payments to franchisees with monthly revenues of less than $5,000 per month, at the franchisees' option. (*Id.*)

Plaintiffs' counsel agrees to mail the proposed Class Notice and Claim Form to the last-known addresses of all individuals who purchased Jani-King franchises from any Defendant and performed cleaning services in Pennsylvania pursuant to such contract at any time since March 2006. (*Id.* ¶ 28.) The Notice informs class members about the allegations in the case, and of their right to object to, or opt out of, the settlement agreement. The Notice will also inform class members of the date, time, and location of the Court's Fairness Hearing.

Distribution of settlement proceeds will be the responsibility of Plaintiffs' counsel. Payments to each class member will be based on the franchise fees, franchise note payments, and insurance payments that they have made since 2006. This distribution formula has been approved by at least two other district courts handing class actions against Jani-King. *See De Giovanni v. Jani-King*, No. 07-10066 (D. Mass.); *Fuller v. Jani-King*, No. 15-00438 (D. R.I.).

## II.   LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure governs Court approval of class action settlements. Rule 23(e) provides that a court may approve a proposal to settle a class action so long as a fairness hearing is held and the court determines that the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998). The Court "bear[s] the important responsibility of protecting absent class members, which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class

4

claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) (citation and internal quotation marks omitted).

Review of a proposed class action settlement proceeds in two steps: preliminary approval and a subsequent fairness hearing. *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014). During preliminary review, counsel submit the proposed terms to the court, and the court makes a preliminary fairness finding. *Id.* A court's decision to preliminarily approve a proposed class action settlement "is a determination that there are no obvious deficiencies and the settlement falls within the range of reason." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (citation omitted). The court's approval should not be construed as a commitment to approve the final settlement. *Id.* Preliminary approval of a proposed class action settlement "establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (citation omitted).

If a court grants preliminary approval, the court directs that notice be provided to all of the potential class members who would be bound by the settlement agreement. *See* Fed. R. Civ. P. 23(c). Class members may object or opt out of the settlement agreement. *See* Fed. R. Civ. P. 23(c), 23(e). After notice is given to class members, the district court holds a fairness hearing. *In re Nat'l Football League*, 775 F.3d at 581. If the district court concludes after the fairness hearing that the settlement is fair, reasonable, and adequate, then final settlement approval is given. Fed. R. Civ. P. 23(e). Preliminary approval is less demanding than final approval of class action settlement agreements. *Gates*, 248 F.R.D. at 444 n.7. "Final approval requires a more rigorous, multifactor assessment of the fairness, adequacy, and reasonableness of a proposed

5

class action settlement." *Pfeifer v. WaWa, Inc.*, No. 16-497, 2018 WL 2057466, at *2 (E.D. Pa. May 1, 2018) (citation omitted).

## III. DISCUSSION

After review of the proposed Settlement Agreement and proposed Notice and Claim Form, we are satisfied that the proposed settlement meets the criteria for preliminary approval. In the preliminary approval phase, we are tasked only with determining whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorney, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (citation omitted). The proposed settlement at issue here does not raise any doubts as to fairness, or otherwise reveal any deficiencies.

Most notably, the class members will substantially benefit from the proposed settlement terms. Jani-King has agreed to pay a total of $3,700,000. While this is perhaps not the greatest possible recovery that Plaintiffs could have obtained, when balanced against the risks of recovering less or nothing had the case proceeded to trial, the amount is a significant benefit. Each of the 290 class members will receive a pro-rata share of the settlement fund based on the fees they had paid to Defendants in conjunction with their providing cleaning services. Settlement amounts will range from approximately $250 to $30,000, with approximately 95 class members entitled to more than $10,000 and more than half of the class members entitled to more than $5,000. (Mot. Settle 9.) In addition, class members will also benefit from the revised franchise agreements offered as a part of the settlement. These franchise agreements will afford the franchisees greater rights and opportunities.

6

In addition, the proposed settlement is the result of arm's-length negotiations by experienced counsel who have reached the settlement after ten years of litigation. Furthermore, the settlement was reached after engaging in mediation with the assistance of a highly respected mediator. Counsel engaged in pre-filing research, an analysis of Plaintiffs' claims and Defendants' financial condition, and a review of class member documents. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (citation omitted)). Finally, a review of the proposed settlement agreement reveals the absence of any unduly preferential treatment for the class representatives or any segment of the class.

We are also satisfied that the proposed Notice submitted with the settlement agreement is adequate. Rule 23(c)(2) requires that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that all members of the class be notified of the terms of the proposed settlement. This "notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 327 (citation and internal quotation marks omitted). The proposed Notice accomplishes these directives. It summarizes the litigation clearly and concisely. It also explains in detail the proposed settlement agreement, including how class members will get paid and class members' options to object to, or opt out of, the settlement. Finally, it provides class members with information about attending the Fairness Hearing.

# IV. CONCLUSION

After ten years of litigation, the settlement was negotiated by experienced counsel with the help of an experienced mediator. It provides significant benefits to the class members. We are satisfied that preliminary approval is appropriate. Accordingly, Plaintiffs' Unopposed Motion for Preliminary Class Action Settlement Approval is granted. A Fairness Hearing is scheduled for Tuesday, August 20, 2019, at 11:00 a.m.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.