IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| PAMELA MYERS ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-1738 |
| JANI-KING OF PHILADELPHIA, INC. | : | |
| ET AL. | : | |

**<u>MEMORANDUM</u>**

**SURRICK, J.**                                                      **AUGUST <u>26</u>, 2019**

Presently before the Court are Plaintiffs' Unopposed Motion for Final Class Action Settlement Approval (ECF No. 159), and Plaintiffs' Unopposed Request for Incentive, Fee, and Expense Awards (ECF No.158). For the following reasons, Plaintiffs' Motion and Request will be granted.

## I.      BACKGROUND

### A.      Background Litigation

In this class action, Plaintiffs Darryl Williams and Howard Brooks pursue claims on behalf of themselves and others similarly situated against Defendants Jani-King of Philadelphia, Inc.; Jani-King, Inc.; and Jani-King International, Inc. (collectively "Jani-King"). Plaintiffs performed cleaning services in Pennsylvania under Jani-King's janitorial franchise system. Plaintiffs allege that Jani-King misclassified them as independent contractors as opposed to employees and, by doing so, took improper deductions from their wages in violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. Ann. § 260.1 *et seq*.

On March 11, 2015, the Court certified a state-law class on Plaintiffs' WPCL claims. *Myers v. Jani-King of Phila., Inc*., No. 09-1738, 2015 WL 1055700, at *10 (E.D. Pa. Mar. 11,

2015), *aff'd sub nom. Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314 (3d Cir. 2016).[1] The

Court certified the following class: "all individuals who signed contracts with [Jani-King], and

performed cleaning services in Pennsylvania pursuant to such contract at any time from March

20, 2006 to present." (Order, ECF No. 88.) There are approximately 290 class members.

Jani-King filed a petition with the Third Circuit Court of Appeals pursuant to Rule 23(f)

of the Federal Rules of Civil Procedure, seeking to appeal this Court's class certification. (ECF

Nos. 93-95.) The Third Circuit granted the Petition and permitted the appeal. (ECF No. 97.)

The matter was stayed pending the outcome of the appeal. (ECF No. 101.) On September 21,

2016, the Third Circuit affirmed the Court's grant of class certification on September 21, 2016.

(ECF No. 103.) Trial was scheduled to take place on March 29, 2019. (ECF No. 112.) Just

weeks before trial, the parties entered into settlement negotiations with the assistance of a

mediator. (ECF No. 155.) The negotiations resulted in a Class Action Settlement Agreement

and Release (the "Settlement Agreement"), which was executed in April 2019. (Settlement

Agreement, Stmt. Mot. Ex. A.)

On May 10, 2019, the Court preliminarily approved the Settlement Agreement. *Myers v.

Jani-King of Philadelphia, Inc.*, No. 09-1738, 2019 WL 2077719, at *1 (E.D. Pa. May 10, 2019).

Specifically, we determined that the Settlement Agreement "does not raise any doubts as to

fairness or otherwise reveal any deficiencies." *Id*. at 3.

### B.    Notice Period and Class Participation

Pursuant to the Settlement Agreement, on May 20, 2019, Plaintiffs' settlement

administrator mailed the Court-approved class notice and claim form to the last-known addresses

---

[1] Plaintiffs initially also requested class certification for claims brought under the
Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.101 *et seq.* That request has been
withdrawn. (ECF No. 86.)

for all individuals who purchased Jani-King franchises from any Jani-King Defendant and performed cleaning services in Pennsylvania pursuant to such contract at any time since March 2006. (Settlement Agreement ¶ 28.) Notice was mailed to approximately 288 class members. (Liss-Riordan Decl. ¶ 5, ECF No. 159-2.) Of these individuals, only 23 settlement class members were unable to be located. This means that class counsel was able to reach approximately 92% of the possible class members. Of those reached, approximately 109 class members filed claims after receiving notice of the Settlement Agreement. Class counsel received no objections to the proposed settlement. Five class members have requested to opt out of the settlement. These exclusions represent only 1.7% of the settlement class.

A Fairness Hearing was held on August 20, 2019. (*See* Min. Entry, ECF No. 120.) The parties now seek the Court's final approval of the Settlement Agreement.

### C. The Settlement Agreement

Under the proposed Settlement Agreement, Defendants will pay a total of $3,700,000 to a non-reversionary settlement fund. (Settlement Agmt. ¶¶ 7, 18.)[2] Reductions from this fund include amounts for attorneys' fees, expenses, and service awards. Specifically, Plaintiffs' counsel has requested $1,233,333.33 in attorneys' fees, $30,000 in service awards to the Named Plaintiffs, and $16,757.37 in costs. (Stmt. Mem. 1 n.3.)[3] After these reductions, $2,419,909.30 will remain in the settlement fund. This amount will be distributed to the 109 class members who have returned settlement claim forms. Pursuant to the Settlement Agreement, Plaintiffs'

---

[2] Non-reversionary means that all the money will be paid out and none will revert to Jani-King.

[3] There are three Named Plaintiffs who will receive service awards: Darryl Williams, Howard Brooks, and Pamela Myers. Myers—who was "instrumental in bringing the case and in pursuing it for years"—passed away during the pendency of this litigation. (Stmt. Mem. 3 n.6.) Her son, Mark Myers, remains active in this litigation. (*Id.*)

counsel will continue to accept late claims until 90 days before the final distribution. Counsel has indicated that Defendants intend to make the final distribution payment on September 1, 2020. Accordingly, late claims will be accepted up until approximately June 1, 2020. The average individual payout is anticipated to be approximately $10,872.00.

Jani-King agrees to pay the total settlement amount in two installments of $1,850,000, the first of which is to be paid 60 days after the Court grants final approval of the settlement. Jani-King agrees to pay the second installment on September 1, 2020. Class members who have submitted claim forms and executed updated franchise agreements by the time the first payment is made will receive their first installment payment from the settlement fund shortly after Jani-King makes the first payment, estimated to be in the Fall of 2019. (Stmt. Mem. 2.) Class members will receive a second payment shortly after Jani-King pays the second installment of the settlement fund.

Payments will be calculated by taking the Qualifying Fees paid by a Claimant during the class period and dividing by the total Qualifying Fees paid by all Claimants during the class period. (Settlement Agreement ¶¶ 11, 33.) Claimants are class members who have filed claims. "Qualifying Fees" include initial franchise fees, fees for additional business, and insurance fees paid by a Claimant during the class period. (Settlement Agreement ¶ 11.) Distribution of settlement proceeds will be the responsibility of class counsel. Payments to each Claimant will be based on the franchise fees, franchise note payments, and insurance payments that they have made since 2006. This distribution formula has been approved by at least two other district courts handling similar class actions against Jani-King. *See De Giovanni v. Jani-King*, No. 07-10066 (D. Mass.); *Fuller v. Jani-King*, No. 15-00438 (D. R.I.).

In addition to making payments, Jani-King has also agreed to make changes to its business practices. Franchisees who settle with Jani-King and wish to continue to do business with them will be offered a new franchise agreement. The aim of the new franchise agreement is to eliminate various controls that Jani-King has had over the franchisees. (Settlement Agreement ¶ 20.) For example, the new franchise agreement does not contain provisions for post-termination non-competition agreements. (*Id*.) It also shortens the non-solicitation period with respect to Jani-King accounts to 12 months. (*Id*.) In addition, franchisees may sign new business that they generate without paying finder's fees to Jani-King. (*Id*.) Jani-King also agrees to "work to transition its business to franchisees that manage multiple larger accounts and employ their own workers." (*Id*. ¶ 21.)

In addition to settlement payments, Jani-King also agrees to make buyout payments to franchisees with monthly revenues of less than $5,000 per month, at the franchisees' option. (*Id*. at ¶¶ 20-21.) As part of the buyout, Jani-King purchases the class members' existing servicing contracts (and terminates their franchise) at a rate of two times the gross monthly revenue of their existing accounts. (*Id*.) The buy-out payment to those who qualify will be paid in addition to the damage payments under the settlement. These additional buyout payments could be worth as much as $10,000 in additional consideration. (*Id*.) To date, approximately 20 class members have opted for a buyout payment. Class members that chose a buyout may continue to perform work for other Jani-King franchises that retain their accounts.

The Settlement Agreement also provides for a total of $30,000 in incentive payments to the Named Plaintiffs Darryl Williams, Howard Brooks, and Pamela Myers ($10,000 each). (Settlement Agreement ¶ 24.) Finally, the Settlement Agreement provides for attorneys' fees in the amount of one-third of the settlement fund, or $1,233,333.33. (*Id*. at ¶ 23.)

## II.     DISCUSSION

Our consideration of the proposed settlement will include the following:  (1) whether the proposed WPCL class action meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and is entitled to final certification; (2) whether the settlement proposed by the parties is fair and adequate; (3) whether the service payment awards to the Named Plaintiffs are fair and reasonable; and (4) whether Plaintiffs' request for attorneys' fees and costs merits approval.

### A.     Class Certification of WPCL Class Under Rule 23

Before determining whether the proposed settlement warrants approval, we must first determine whether Plaintiffs have met the elements of final certification of the WPCL class.  We previously granted preliminary certification to the WPCL class to include "all individuals who signed contracts with Jani-King of Philadelphia, Inc.; Jani-King, Inc.; or Jani-King International, Inc., and performed cleaning services in Pennsylvania pursuant to such a contract at any time from March 20, 2006 until the present." *Myers v. Jani-King of Philadelphia, Inc.*, No. 09-1738, 2015 WL 1055700, at *16 (E.D. Pa. Mar. 11, 2015), *aff'd sub nom. Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314 (3d Cir. 2016); (Order, ECF No. 88.)

Class certification under Rule 23 has two components.  The party seeking class certification must first establish the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008).

"If all four requirements of Rule 23(a) are met, a class of one of three types (each with additional requirements) may be certified" under Rule 23(b). *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 n.6. Plaintiffs seek certification under Rule 23(b)(3), which states that "[a] class action may be maintained if Rule 23(a) is satisfied and if: (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These are known as the predominance and superiority factors of Rule 23(b)(3).

The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). Certification is only proper "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309 (footnote and quotation marks omitted).

When we granted preliminary certification of this class, we provided an extensive analysis of the Rule 23 factors that govern certification. *Myers*, 2015 WL 1055700, at *5-15. Our grant of class certification was affirmed by the Third Circuit. *See Williams*, 837 F.3d at 325. As class counsel point out, the proposed settlement class is "coextensive with the class this Court has already certified." (Stmt. Mem. 16.) Based upon this, final certification of the WPCL class is appropriate without duplicative comprehensive analysis. Nevertheless, we will briefly address the Rule 23 factors.

1.  Numerosity

Plaintiffs must first demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is

required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the numerosity requirement "has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Plaintiffs have produced evidence demonstrating that there were approximately 288 possible Jani-King franchisees that qualified as potential members of the WPCL settlement class. The numerosity requirement is met.

2.     <u>Commonality</u>

Plaintiffs must also demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality does not require perfect identity of questions of law or fact among all class members. Rather, 'even a single common question will do.'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). This requirement of class certification is easily met. *Id.* It is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). Here, questions of fact and law are common to the proposed settlement class. Specifically, the question of whether and to what extent Jani-King controlled or directed its franchisees is common to all class members. As the Third Circuit concluded, various documents that serve as evidence in this case, including "[t]he Jani-King franchise agreement, policies manual, and training manual, . . . describe the level of Jani-King's right to control its franchisees." *Williams*, 837 F.3d at 321-22. The claims of the settlement class members arise from the same policies and procedures used by Defendants; therefore, their claims are susceptible to the same common proof. The commonality requirement is met.

3. <u>Typicality</u>

Plaintiffs must also demonstrate that the claims or defenses of the representative parties are typical of the claims or defenses of the proposed class. Fed. R. Civ. P. 23(a)(3). A district court should determine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006). In addition, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citation omitted).

There are three Named Plaintiffs in this class action, each of whom was a franchisee for a Jani-King Defendant. Like other members of the proposed class, they allege that Defendants' policies and procedures led to the misclassification of franchisees as independent contractors, which led to monetary damages. Their claims arise out of the same policies and practices as the claims of other members of the settlement class. The incentives of the Named Plaintiffs are aligned with those of the class. The typicality requirement is met.

4. <u>Adequacy</u>

Finally, Plaintiffs must demonstrate that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement concerns both: (1) the "experience and performance of class counsel"; and (2) the "interests and incentives of the representative plaintiff[]." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Beck*, 457 F.3d at 296 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Here, there have

been no allegations from either side that the Named Plaintiffs have any interests that are incompatible with the class members' interest. In fact, as will be explained more below, the Named Plaintiffs were able to negotiate a settlement that benefits both former and current franchisees, small or large. As to the second requirement, class counsel have very diligently and competently pursued the claims of all class members. The adequacy requirement has been satisfied.

### 5.    Predominance and Superiority

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. Rule 23(b)(3), under which Plaintiffs seek final class certification, requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). The four factors pertinent to the superiority inquiry are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The predominance requirement is easily met. Plaintiffs contend that Jani-King controlled franchisees and that this level of control is revealed in documents that dictate Jani-King company-wide policy and procedure. Every class member is seeking the same type of relief based on the same legal claims against Jani-King. Questions of law and fact common to the class members predominate over questions affecting only individual members. *Williams*, 837 F.3d at 321 (affirming determination that predominance requirement met where the issue of Jani-King control could be resolved with common evidence).

The superiority requirement is also met. Even if individual class members had the resources to pursue individual claims against Defendants, the costs of pursuing such claims would likely exceed any recovery. *See Orloff v. Syndicated Office Sys., Inc*., No. 00-5355, 2004 WL 870691, at *5 (E.D. Pa. Apr. 22, 2004) ("A class action is superior to individual lawsuits by the Class members because it provides an efficient alternative to individual claims, and because individual Class members are unlikely to bring individual actions given the likelihood that their litigation expenses would exceed any potential recovery."). In addition, the class members' interests in having their claims adjudicated through the class action proceeding is revealed by the fact that approximately 40% of class members filed claims, not one class member objected to the proposed settlement, and only five class members requested exclusion.

Accordingly, we are satisfied that final certification of the class under Rule 23 is appropriate. Therefore, we will certify the proposed WPCL class for the purposes of settlement approval.

### B. Approval of Settlement Agreement

Rule 23(e) requires a district court to approve any settlement of a certified class before settlement becomes final. Fed. R. Civ. P. 23(e) ("The claims, issues, or defense of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). "In evaluating a class action settlement under Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable, and adequate. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) (citing Fed. R. Civ. P. 23(e)). This is because "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class." *Id*. at 593; *see also In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010) ("Under Rule 23(e), trial judges bear the important responsibility of protecting absent class members, which is executed by the court's assuring that the settlement represents adequate compensation for the release of the class claims." (citation omitted)).

The Third Circuit has also instructed that a presumption of fairness applies where: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (internal quotation marks and citation omitted).

As we stated previously in this case, "the proposed settlement is the result of arm's-length negotiations by experienced counsel who have reached the settlement after ten years of litigation." *Myers*, 2019 WL 2077719, at *3. The parties' negotiations were aided by a highly regarded and experienced mediator, D. Charles Stohler, Esquire. With the mediator's assistance, the parties engaged in negotiations late into the evening on February 7, 2019 and continued to work diligently to finalize the terms of the Settlement Agreement, including the terms of a new

franchise agreement addressing the concerns of the class members. (Stmt. Mem. 8.) As to discovery, the parties engaged in pre-filing research and analysis of Plaintiff's claims regarding potential damages, which included a review and analysis of spreadsheets containing various applicable payments by class members. The parties had completed discovery and had already briefed dispositive motions before engaging in settlement negotiations. As to the fourth factor, class counsel Lichten & Liss-Riordan P.C. is experienced in class actions and indeed has successfully litigated against Jani-King in two other states, and against other cleaning franchise companies. Finally, not one member of the class objected to the proposed settlement, and only a small fraction of the class (1.7%) opted out. Therefore, a presumption of fairness attaches. We will nevertheless perform a thorough examination in assessing the fairness, reasonableness, and adequacy of the proposed settlement agreement.

In *Girsh v. Jepson*, the Third Circuit articulated nine factors for district courts to consider in deciding whether a class-action settlement is fair and reasonable:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (alterations omitted) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *In re Pet Food Prod. Liab. Litig.*, 629 F.3d at 350.[4] We must

---

[4] Class counsel analyzes fairness under the factors identified in Rule 23(e). Effective December 1, 2018, Rule 23(e) was amended to list factors to guide a district court's determination of whether a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). These factors include:
(A) the class representatives and class counsel have adequately represented the class;

make findings regarding the *Girsh* factors where appropriate. *Id.* "The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *Id.* (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

### 1. Complexity, Expense, and Likely Duration of the Litigation

"The first factor captures the probable costs, in both time and money, of continued litigation." *Barel v. Bank of Am.*, 255 F.R.D. 393, 400 (E.D. Pa. 2009) (citation and internal quotation marks omitted). If the proposed Settlement Agreement is not approved by the Court,

---

(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

*Id.* The 2018 Committee Notes to Rule 23 recognize that circuit courts have "generated lists of factors" to address the fairness of settlement agreements. The Committee Notes further state that "[o]verall, these factors focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns." *Id.* The factors included in the 2018 amendments to Rule 23(e)(2) were not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes.

Since these factors have been included in Rule 23, most courts in the Third Circuit adhere to applying the *Girsh* factors when considering whether class action settlements are fair. *See, e.g.*, *Ward v. Flagship Credit Acceptance LLC*, No. 17-2069, 2019 WL 2061603, at *2 (E.D. Pa. May 9, 2019); *Huffman v. Prudential Ins. Co. of Am.*, No. 10-05135, 2019 WL 1499475, at *2-3 (E.D. Pa. Apr. 5, 2019); *Haas v. Burlington Cty.*, No. 08-1102, 2019 WL 413530, at *4 (D.N.J. Jan. 31, 2019). Other courts in this Circuit consider both the factors in *Girsh* and the factors in Rule 23(e)(2) when considering whether class action settlements are fair. *See, e.g.*, *Becker v. Bank of New York Mellon Tr. Co., N.A.*, No. 11-6460, 2018 WL 6727820, at *6-7 (E.D. Pa. Dec. 21, 2018); *Vinh Du v. Blackford*, No. 17-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018). The *Girsh* factors are comprehensive and overlap with many of the factors contained in Rule 23. We will focus our consideration on the *Girsh* factors and address any factor under Rule 23 that is not addressed by *Girsh*.

the parties would face summary judgment, and possibly trial and subsequent appeals. This litigation has already lasted over ten years, in part due to Defendants' appeal to the Third Circuit regarding whether the class could be certified. There is a real risk that subsequent appeals would be filed, particularly on the issues raised in the parties' summary judgment submissions—for example, whether Plaintiffs were properly classified as independent contractors under Pennsylvania law. Dispositive motions, trial, and subsequent appeals would not only further extend this already protracted litigation, but it would also burden the parties and the Court with additional costs. This factor weighs in favor of approving the Settlement Agreement.

### 2. Reaction of the Class to the Settlement

Of the 265 class members who received notice of the Settlement Agreement, approximately 109 filed claims. Not one class member objected to the Settlement Agreement. In addition, only five class members requested to opt out of the settlement. The reaction of the class members to the Settlement has been overwhelmingly positive, which further supports approval of the proposed Settlement Agreement. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that "only" 29 objections in 281 member class "strongly favors settlement").

### 3. The Stage of the Proceedings and the Amount of the Discovery Completed

"This factor captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (citation and internal quotation marks omitted). As mentioned above, the parties completed discovery and filed summary judgment briefs prior to engaging in settlement negotiations. This factor also weighs in favor of approving the settlement.

4. <u>The Risks of Establishing Liability and the Risks of Establishing Damages</u>

"These inquiries 'survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement.'" *In re Ikon Office Sols., Inc. Sec. Litig.*, 209 F.R.D. 94, 105 (E.D. Pa. 2002) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). We agree with class counsel that Plaintiffs face "serious risks" if they proceed to trial. (Stmt. Mem. 9.) In their summary judgment motion, Defendants argued that (1) Plaintiffs were properly classified as independent contractors under Pennsylvania law; and (2) even if they were misclassified, Plaintiffs could not recover under the WPCL because there was allegedly no agreement to pay Plaintiffs wages. These issues are fact-intensive, which increases a risk that a jury could find for Defendants. As a result, this factor also weighs in favor of approving the Settlement Agreement.

5. <u>The Risks of Maintaining the Class Action through Trial</u>

There will always be a "risk" or possibility of decertification and, consequently, the court can always find that this factor weighs in favor of settlement. *In re Prudential Ins. Co.*, 148 F.3d at 321. Therefore, "the manageability inquiry in settlement-only class actions may not be significant." *Id.* Nevertheless, Defendants would likely oppose certification of the class and could also seek to decertify the class prior to trial. However, the Third Circuit has already confirmed our decision to certify this WPCL class. This significantly decreases the risk of decertification. As a result, this factor neither weighs in favor or, nor against, approving the proposed settlement.

6. Defendants' Inability to Withstand a Greater Judgment

The parties provided no information to the Court about Defendants' financial health and whether they would be able to withstand a greater judgment. Since we are unable to assess this factor, it neither weighs in favor of, nor against, approving the Settlement Agreement.

7. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation

The final two *Girsh* factors assess "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. "[T]he ultimate test of the value of a settlement in the class context is who gets what and how much." *Id.* Class counsel calculated the maximum value of Plaintiffs' claims to be approximately $12,200,000. Defendants calculated a maximum entitlement to damages of $6,200,000 based on the same information. The parties negotiated a settlement amount that provides Plaintiffs a recovery amount of approximately $2,429,909.30, after deductions of the amounts for attorneys' fees, costs, and awards for Named Plaintiffs. The settlement amount represents a recovery to Plaintiffs of between 20% and 39% of the maximum damages' calculations. We are satisfied that this recovery is reasonable, particularly considering the risks Plaintiffs would face if they proceeded to trial, and because Plaintiffs received other non-monetary benefits as part of the settlement, i.e. a negotiated franchise agreement that permits them greater control over their clients. This factor weighs in favor of approving the Settlement Agreement.

Having examined the proposed Settlement Agreement considering the *Girsh* factors, we are satisfied that the settlement is "fair, reasonable, and adequate." *Girsh*, 521 F.2d at 157.[5]

---

[5] Consideration of the factors under Rule 23(e) also counsels in favor of approving the Settlement Agreement. As we noted above, both the Named Plaintiffs and class counsel have adequately represented the WPCL Class. Fed. R. Civ. P. 23(e)(2)(A). Also as noted above, the

## C.     Service Awards to Named Plaintiffs

As part of the proposed settlement, the parties request that each of the three Named Plaintiffs—Darryl Williams, Howard Brooks, and Pamela Myers—receive a service payment of $10,000.  (Settlement Fees Mem. 1-2, ECF No. 158.)  These awards are given in exchange for the Named Plaintiffs' efforts in bringing and prosecuting this case.  In particular, the Named Plaintiffs were involved in producing and reviewing documents, speaking with class member to encourage participation, reviewing pleadings, providing declarations in support of motions, participating in depositions, responding to written discovery requests, and reviewing the parties' proposed settlement terms.  (*Id.* at 2.)  Ms. Myers was actively involved in the case since its inception in May 2008 until she passed away in August 2013.  At that time, Mr. Brooks became a Named Plaintiff to assist in place of Ms. Myers.  (*Id.*)  Mr. Williams has been involved in the case since its inception.  (*Id.*)

In addition to the Named Plaintiffs' active involvement in the litigation, they also risked their employment reputation by participating in this class action.  Under the circumstances, the

Settlement Agreement was negotiated at arms' length with assistance from competent class counsel and a respected mediator.  Fed. R. Civ. P. 23(e)(2)(B).  The award that Plaintiffs will receive is adequate considering the costs, risks, and delay of any trial and appeal.  Fed. R. Civ. P. 23(e)(2)(C)(i).  In addition, the settlement is adequate considering the effectiveness of class counsel's methods in reaching potential class members.  Approximately 92% of the possible class members received notice of the proposed Settlement Agreement.  Of those that received notice, approximately 38% have filed claims.  Class counsel have agreed to continue to accept late-filed claims.  The methods used to locate class members and process claims were more than adequate.  Fed. R. Civ. P. 23(e)(2)(C)(ii).  As explained in greater detail below, we find that the attorneys' fee award is reasonable.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Finally, the Settlement Agreement treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2)(D).  Each class member will receive a cash payment calculated based on the total payments made by each member for franchise fees, finders fees, insurance payments, etc., made during the class period.  This method assures that individuals who had a longer relationship with Jani-King, and thus made larger payments in fees, will ultimately receive greater compensation under the Settlement Agreement.  This makes sense and further supports approving the Settlement Agreement.

requested service award is appropriate.  *See Leap*, 2016 WL 1730693, at \*10; *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.  In fact, courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the class action litigation." (internal citation and quotation marks omitted)).  Under the circumstances, the awards to the Named Plaintiffs are reasonable and appropriate.

### D.      Approval of Attorneys' Fees and Costs

It is beyond dispute that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Plaintiffs request court approval of attorneys' fees for class counsel in the amount of $1,233,333.33, which constitutes one-third (1/3) of the gross settlement amount of $3.7 million.  Plaintiffs also request that the Court approve reimbursement of class counsel's out-of-pocket costs of $16,757.37.

#### 1.      Percentage-of-Recovery

In a case such as this, where class members recover from a single common fund, the Third Circuit favors the percentage-of-recovery method in evaluating the fairness of attorneys' fees.  *In re Prudential Ins. Co.*, 148 F.3d at 333 ("The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (citation and internal quotation marks omitted)).  In evaluating the fairness of the requested fees utilizing this method, we must weigh the following seven factors:

> (1) the size of the fund and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000)). "These fee award factors need not be applied in a formulaic way and in certain cases, one factor may outweigh the rest." *Id*.

Class counsel contends that all factors favor approval of the requested fees. The Settlement Fund is a non-reversionary fund that covers claims of all class members who wish to participate. Late claims will continue to be accepted until 90 days prior to the date of the second installment payment under the Settlement Agreement, or until June 1, 2020. Approximately 40% of the Settlement Class has filed claims. Every class member who wishes to benefit can do so. This factor weights in favor of the requested attorneys' fees and costs.

As to the second factor, we note that, among the 288 class members who received notice of the proposed settlement, none lodged an objection to the Settlement Agreement. In addition, only five class members, or 1.7% of the settlement class, requested exclusion from the settlement. The third factor likewise weighs in favor of approving the fee award as class counsel are highly skilled and experienced attorneys who are nationally recognized for pursuing class action litigation, particularly against franchise cleaning companies. The complexity of this case, which includes WPCL claims under Pennsylvania law, supports the requested fee. As to the fifth factor, attorneys always risk nonpayment when they accept cases on a contingency fee basis. Class counsel spent a substantial number of hours to efficiently analyze the claims involved and negotiate a settlement. Finally, the requested fee of one-third (1/3) of the settlement amount is

reasonable in comparison to awards in other cases. *See Stagi v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 564, 571 (E.D. Pa. 2012) (citing cases and noting that fees in the Eastern District of Pennsylvania range between 19% and 45% in common fund cases).

We are satisfied that the requested attorneys' fees and costs are justified by counsel's successful resolution of this matter and the significant cash shares for the class members.

### 2. The Lodestar Method

"The Third Circuit has stated that it is sensible for district courts to cross-check the percentage fee award against the lodestar method." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 766 (E.D. Pa. 2016) (quoting *In re Rite Aid Corp.*, 396 F.3d at 305).

> The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work. The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award . . . . The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.

*In re Rite Aid Corp.*, 396 F.3d at 305-07.

Here, class counsel represents that they accumulated a total lodestar amount of $1,131,004.50. (Fees Stmt. Mem. 5; Cohen Decl. ¶¶ 6-9; Liss-Riordan Decl. ¶ 28.) When calculated against the requested fee of $1,233,333.33, the lodestar multiplier is 1.09. Lodestar multipliers ranging from one to four are frequently awarded in the Third Circuit. *See Whitman,* 197 F.R.D. at 150. Multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential Ins. Co.*, 148 F.3d at (citation omitted).

The lodestar cross-check provides additional support for the requested attorneys' fees. Based upon these circumstances, we are satisfied with the reasonableness of the requested fee and we will approve class counsel's request for $1,233,333.33 in attorneys' fees. In addition, class counsel is entitled to be reimbursed for their litigation-related expenses in the amount of $16,757.37.

## III.    CONCLUSION

After over ten years of litigation, the settlement was negotiated by experienced counsel with the help of an experienced mediator. It provides significant monetary and non-monetary benefits to the class members. We are satisfied that final approval of the Settlement Agreement is appropriate. Accordingly, Plaintiffs' Unopposed Motion for Final Class Action Settlement Approval, and Plaintiffs' Unopposed Request for Incentive, Fee, and Expense Awards, are both granted.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**